UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
Telephone (973) 597-2500
E-mail: metkin@lowenstein.com
E-mail: nfulfree@lowenstein.com

Jennifer Fiorica Delgado, Esq.
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone (212) 262-6700
E-mail: jdelgado@lowenstein.com

**GODFREY & KAHN, S.C.**
Daniel T. Flaherty (*pro hac vice application forthcoming*)
Daniel J. Blinka (*pro hac vice application forthcoming*)
Nicholas J. Bezier (*pro hac vice application forthcoming*)
833 E. Michigan St., Ste. 1800
Milwaukee, WI  53202
Phone: 414-273-3500
E-mail: Dflaherty@gklaw.com
E-mail: Dblinka@gklaw.com
E-mail: Nbezier@gklaw.com

*Counsel to Defendant, Wipfli LLP*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS LLC , *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 24-14539 (JKS) |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>Plaintiff,<br>v.<br><br>WIPFLI LLP and DOES 1-100,<br>Defendants. | Adv. Proc. No. 24-01456 (JKS) |

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................1

JURISDICTION AND VENUE ...................................................................................2

RELEVANT FACTUAL ALLEGATIONS .................................................................2

LEGAL STANDARD...................................................................................................4

ARGUMENT ...............................................................................................................5

I.      THE DOCTRINE OF IN PARI DELICTO BARS ALL OF THE
        TRUSTEE'S CLAIMS. ....................................................................................5

        A.      In pari delicto applies to the Trustee notwithstanding the Plan and
                the assignment of Investor claims to the Trust. ......................................6

        B.      The Complaint establishes the elements of the in pari delicto
                defense. ....................................................................................................8

II.     THE COURT SHOULD DISMISS THE TRUSTEE'S SECURITIES LAW
        CLAIM BECAUSE WIPFLI WAS NOT AN "AGENT" OF NRIA. ...............8

        a.      The Trustee incorrectly defines what is an "agent" under the
                NJUSA. .....................................................................................................9

        b.      Wipfli was not an agent of NRIA under the NJUSA...............................10

III.    THE COURT SHOULD DISMISS THE ACCOUNTING
        MALPRACTICE CLAIM. ...............................................................................13

        a.      The Trustee has not plead sufficient facts to assert an
                accounting malpractice claim if it is asserting it on behalf of
                NRIA.........................................................................................................13

        b.      The Accountant Liability Act bars the Investors' claims. .........................15

IV.     THE TRUSTEE FAILS TO ALLEGE SUFFICIENT FACTS TO MEET
        THE HEIGHTENED PLEADING STANDARD FOR FRAUD CLAIMS
        UNDER FED. R. CIV. P. 9(B). .......................................................................16

V.    THE TRUSTEE'S UNJUST ENRICHMENT CLAIM DEPENDS UPON
THE FRAUD CLAIMS – BECAUSE THOSE CLAIMS FAIL, SO TOO
DOES THE UNJUST ENRICHMENT CLAIM. .............................................................17

CONCLUSION..............................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>PAGES</u>

<small>CASES</small>

*Ackerman v. Schwartz*, 733 F. Supp. 1231 (N.D. Ind. 1989),
   *aff'd in part and rev'd in part on other grounds*,
   947 F.2d 841 (7th Cir.1991) ...............................................12

*Adams v. Am. W. Sec., Inc.*,
   510 P.2d 838 (Or. 1973) ...............................................12

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994)...............................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................4, 14

*Baker, Watts & Co. v. Miles & Stockbridge*,
   620 A.2d 356 (Md. Ct. Spec. App. 1993) ...............................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)...............................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................4

*Bennett v. Durham*,
   683 F.3d 734 (6th Cir. 2012) ...............................................11,12

*Benway v. Md. Port Admin.*,
   989 A.2d 1239 (Md. Ct. Spec. App. 2010) ...............................................12

*Bondi v. Citigroup, Inc.*,
   32 A.3d 1158 (N.J. Super. Ct. App. Div. 2011)...............................................6, 8

*Cast Art Indus., LLC v. KPMG LLP*,
   3 A.3d 562 (N.J. App. Div. 2010),
   *overruled on other grounds*,
   36 A.3d 1049 (N.J. 2012)...............................................14

*Cast Art Indus., LLC v. KPMG LLP*,
   36 A.3d 1049 (N.J. 2012)...............................................16

*CFT Seaside Inv. Ltd. P'ship v. Hammet*,
   868 F. Supp. 836 (D.S.C. 1994)...............................................12

*Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*,
No. 3:19-cv-20525, 2024 WL 3032578 (D.N.J. June 17, 2024).............................................13

*In re Dep't 13, Inc.*,
No. 23-10691, 2024 WL 958080 (Bankr. D. Del. Mar. 5, 2024) ..............................................6

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir.1990) ....................................................................................................16

*Donachy v. Intrawest U.S. Holdings, Inc.*,
No. 10-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012) .........................................................17

*Duraport Realty Three, LLC v. Trinity Prods., Inc.*,
No. 12-CV-2305, 2013 WL 775537 (D.N.J. Feb. 28, 2013) ...................................................16

*Excalibur Oil, Inc. v. Sullivan*,
616 F. Supp. 458 (N.D. Ill. 1985) ...........................................................................................12

*Fernandes v. Dar Dev. Corp.*,
119 A.3d 878 (N.J. 2015)........................................................................................................15

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)......................................................................................................4

*In re Hedged-Investments Assocs., Inc.*,
84 F.3d 1281 (10th Cir. 1996) ..................................................................................................7

*Jenson v. Touche Ross & Co.*,
335 N.W.2d 720 (Minn. 1983),
*overruled on other grounds*,
*Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*,
662 N.W.2d 125 (Minn. 2003)................................................................................................13

*Johnson v. Colip*,
658 N.E.2d 575 (Ind.1995) .....................................................................................................12

*Klein v. Boyd*,
949 F. Supp. 280 (E.D. Pa. 1996) ...........................................................................................12

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004),
*abrogation on other grounds recognized by*
*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300, 323 n.22 (3d Cir. 2010) ...................................................................................16

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
Nos. 94-5522, 96-2318,
2005 WL 3500032 (D.N.J. Dec. 20, 2005) ..........................................................................9, 11

*In re Mortg. Fund '08 LLC*,
   No. 11-49803, 2014 WL 543685 (Bankr. N.D. Cal. Feb. 11, 2014)
   *aff'd*, 527 B.R. 351 (N.D. Cal. 2015) ...................................................................7

*In re Mortg. Fund '08 LLC*,
   527 B.R. 351 (N.D. Cal. 2015) ..........................................................................6

*In re N. Am. Acceptance Corp. Sec. Cases*,
   513 F. Supp. 608 (N.D. Ga. 1981) ...................................................................12

*Nisselson v. Lernout*,
   469 F.3d 143 (1st Cir. 2006) ..............................................................................6

*Off. Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*,
   267 F.3d 340 (3d. Cir. 2001)........................................................................5, 6, 7

*Peterson v. McGladrey & Pullen, LLP*,
   676 F.3d 594 (7th Cir. 2012) ..............................................................................6

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..........................................................................................11

*Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*,
   No. 12-7242, 2013 WL 5467093 (D.N.J. Sep. 30, 2013) .............................4, 5

*Rendler v. Markos*,
   453 N.W.2d 202 (Wis. Ct. App.1990) .............................................................12

*Sevenson Env't Servs., Inc. v. Diversified Royalty Corp.*,
   No. 08-1386, 2018 WL 5033749 (D.N.J. Oct. 16, 2018) .................................8

*In re Verilink Corp.*,
   405 B.R. 356 (Bankr. N.D. Ala. 2009) ..............................................................6

*Ward v. Bullis*,
   748 N.W.2d 397 (N.D. 2008) ..........................................................................12

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000)................................................................................8

*Zendell v. Newport Oil Corp.*,
   544 A.2d 878 (N.J. Super. Ct. App. Div. 1988).........................................10, 11

**STATUTES**

11 U.S.C. § 541 ........................................................................................................7

15 U.S.C. § 77l(1) ..............................................................................................10, 11

28 U.S.C. § 157(b) ............................................................................................................2

28 U.S.C. §§ 1408 .............................................................................................................2

28 U.S.C. § 1409 ...............................................................................................................2

N.J.S.A. § 2A:53A-25 .....................................................................................................15

N.J.S.A. § 49:3–71 .............................................................................................................9

N.J.S.A. § 49:3-49(b) ........................................................................................................9

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................5

Fed. R. Civ. P.  9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .....................................................................................................5

**OTHER AUTHORITIES**

Jennifer J. Johnson, *Secondary Liability for Securities Fraud: Gatekeepers in State Court,*
    36 Del. J. Corp. L. 463, 482-83 (2011) ...................................................................12

## DEFENDANT WIPFLI LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

## INTRODUCTION

This action seeks to shift the culpability for a Ponzi scheme from the perpetrators of the scheme to an accounting firm.  Plaintiff AIRN Liquidation Trust Co., LLC, as the liquidating trustee of the AIRN Liquidation Trust (the "Trustee") asserts that Defendant Wipfli LLP ("Wipfli") aided and abetted the Ponzi scheme by providing common accounting services to entities allegedly managed by the co-conspirators.  The Trustee does not clearly allege the entities to which Wipfli provided accounting services, nor the specific services it provided.  Rather, it vaguely says Wipfli provided services to National Realty Investment Advisors, LLC ("NRIA") without reference to any specific engagement with NRIA.  The Trustee cannot reference an engagement that does not exist – Wipfli never provided accounting services to NRIA.  The Trustee, nonetheless, brings claims against Wipfli to remedy damages suffered by investors in the entities managed by alleged co-conspirators.  Wipfli vigorously disputes that it aided and abetted, assisted, or was otherwise aware of a Ponzi scheme, and, if it must, will demonstrate that to the Court to defeat the Trustee's claims.

Wipfli need not do that because the Trustee's claims are legally deficient.  Under the equitable doctrine of *in pari delicto*, the Trustee cannot assert any of the claims in the Complaint because the liquidated entity—by its management—coordinated the fraud.  Moreover, the Trustee claims that Wipfli violated the New Jersey Uniform Securities Act, but the Complaint fails to allege that Wipfli even attempted to effect the sale of NRIA's securities.  The Trustee's accounting malpractice claim seeks to recoup damages suffered by Investors, not NRIA.  Even if the Trustee were pursuing claims on behalf of Investors, New Jersey law requires that third-party claimants like the Investors show an accountant agreed that its work product could be relied upon to enter

into a transaction. There are no such allegations here. This Court should dismiss the Trustee's fraud claims pursuant to Federal Rule of Civil Procedure 9(b) because they lack the required specificity. Finally, the Trustee's unjust enrichment claim is premised entirely upon its fraud claims. It fails because the Trustee cannot sustain its fraud claims. In sum, the Trustee should pursue the perpetrators of the Ponzi scheme—not accountants providing general bookkeeping or tax services, particularly accountants who never provided those services to NRIA itself.

## JURISDICTION AND VENUE

The Court is alleged to have subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Wipfli denies that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Wipfli demands a jury trial. To the extent that any matters in this adversary proceeding are heard by the Bankruptcy Court, Wipfli does not consent to the Bankruptcy Court entering any final orders.

## RELEVANT FACTUAL ALLEGATIONS

The Trustee asserts claims on behalf of AIRN Liquidation Trust Co., LLC, a liquidating trust that is the successor of NRIA. (Compl. (dkt. 3953) ¶ 10.) NRIA operated a real estate development and investment firm in Florida, New York, New Jersey, and Pennsylvania. (*Id.* ¶ 15.) NRIA was in turn allegedly operated by a group of "Insiders," including Nick Salzano, Rey Grabato, Dustin Salzano, John Farina, and other unidentified co-conspirators. (*Id.* ¶ 14.) Through NRIA's marketing, third-party Investors contributed funds to purchase interests in limited liability companies that were marketed as associated with a single investment property. (*Id.* ¶ 16.) However, Investors' funds were allegedly passed through these entities to NRIA to pay guaranteed

returns of earlier Investors.  (*Id.*)  The Trustee asserts this scheme began in 2016.  (*Id.*)  In 2018, a group of Insiders formed NRIA Partners Portfolio Fund I LLC (the "Fund"), which "rolled up" the individual property LLCs into a pooled fund and solicited more Investors to pay returns on earlier investments.  (*Id.* ¶ 19.)  The Trustee asserts that, throughout the Insiders' scheme, the Insiders "falsified the Fund's financial statements and financial information" in its market.  (*Id.* ¶ 25.)

The Trustee alleges that Insiders extracted "Investor cash" from NRIA by a related entity named U.S. Construction, Inc. ("USC").  (Compl. ¶ 39.)  USC, by its principal Dustin Salzano, opened accounts in the name of the individual property LLCs and directed funds from those LLCs to NRIA or USC.  (*Id.* ¶ 42.)  This extraction of Investor funds by the Insiders, financed through the solicitation of additional Investor funds, causes the Trustee to label NRIA and its associated entities as a Ponzi scheme.  (*Id.* ¶ 14.)  Nonetheless, the Trustee acknowledges that NRIA "raised more than $600 million" for the Fund and was occasionally profitable.  (*Id.* ¶¶ 24, 26.)

Wipfli allegedly provided accounting services to USC from approximately 2010 to early 2022.  (Compl. ¶ 53.)  These services included preparing financial statements for USC and the personal tax returns of USC's principals.  (*Id.*)  From approximately February 2017 to July 2021, the Trustee alleges that Wipfli provided accounting services to NRIA, including the maintenance of accounting files, tax returns, and K-1 forms for Investors[1].  (*Id.* ¶ 55.)  Based upon Wipfli's provision of these services, the Trustee alleges that Wipfli overlooked "commingling funds,

---

[1] This allegation, along with related allegations, is vague.  The Trustee is not clear about whether it believes Wipfli provided accounting services to NRIA or the various NRIA-affiliated LLCs that owned investor properties.  At times the Complaint contends Wipfli provided accounting services to the NRIA LLC entities (referring to the investor LLCs), and it cites engagement letters to support the allegations.  *See e.g.* Compl. ¶¶ 57-58.  Often, however, the Complaint inaccurately states Wipfli provided accounting services to NRIA, implying it provided these services to the parent company.  *See e.g. id.* ¶¶ 55 and 59.  The complaint never alleges the existence of a specific engagement with NRIA.  Wipfli understands it must accept all allegations of the complaint as true for the purposes of this motion, but affirmatively alleges it only provided certain accounting services to USC and the NRIA investor LLCs, not NRIA itself.

moving expenses from the individual property accounting files to the NRIA parent books, and inducing Investors to roll into the Fund," thereby hiding the Ponzi scheme from Investors. (*Id.* ¶ 69.) Wipfli's supposed constructive awareness of the fraud scheme would cause it to "immediately flag" the scheme, as the Trustee tells it, if Wipfli "were not aiding and abetting the fraud." (*Id.* ¶ 72.) Consequently, the Trustee asserts claims for aiding and abetting the Insiders' fraud, violations of the New Jersey Uniform Securities Act, and accounting malpractice.

## **LEGAL STANDARD**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility" requires "more than a sheer possibility that a defendant has acted unlawfully" and facts beyond those "'merely consistent with' a defendant's liability." *Id.* (citation omitted). The complaint must include facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions cast as facts do not suffice to meet the plausibility standard. *Id.* The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, fraud allegations and claims are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). *Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*, No. 12-7242, 2013 WL 5467093, *19 (D.N.J. Sep. 30, 2013) (aiding-and-abetting fraud claim). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud[.]" This requires the plaintiff to "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Even though a plaintiff may plead intent or knowledge generally under Rule 9(b), "the complaint must still contain more than a conclusory allegation, and the pleading must

meet the less rigid—though still operative—strictures of [Fed. R. Civ. P. 8]." *Prudential Ins. Co. of Am.*, 2013 WL 5467093, at \*3.

Finally, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense…appears on its face." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (reviewing motion to dismiss for statute of frauds affirmative defense).

## ARGUMENT

The Court should dismiss the Trustee's claims.  First, the Trustee's claims are barred by the doctrine of *in pari delicto*.  The Trustee is the successor to NRIA, and NRIA's actions—and the actions of its management which are imputed to NRIA—render it equitably unable to assert claims for damages for which it is substantially responsible for causing.  Second, the Trustee's claim under the New Jersey Uniform Securities Act should be dismissed because Wipfli did not participate in NRIA's sale of securities, a prerequisite to establish liability under that law.  Third, the accounting malpractice claim fails because NRIA cannot recover damages suffered by Investors for negligence arising from a duty owed by Wipfli to NRIA.  Fourth, the Trustee's fraud claims do not sufficiently allege facts that meet the heightened pleading standard for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure.  Fifth, the Trustee predicates its unjust enrichment claim upon its fraud claims, and the deficiencies of those claims inevitably result in the dismissal of the unjust enrichment claim.

## I.    THE DOCTRINE OF *IN PARI DELICTO* BARS ALL OF THE TRUSTEE'S CLAIMS.

The Court should dismiss the Trustee's claims under the long-established doctrine of *in pari delicto*, which "provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Off. Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001).  "Under New Jersey law, the party invoking the defense must

establish that the party against whom the defense is asserted must have 'substantially equal responsibility for the underlying illegality' to permit dismissal of claims asserted by the aggrieved party." *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1174 (N.J. Super. Ct. App. Div. 2011) (citation omitted). The basis for the *in pari delicto* defense is two-fold: (1) "courts should not lend their good offices to mediating disputes among wrongdoers" and (2) "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

The *in pari delicto* defense applies to the types of claims asserted here—including in this Circuit. In *R.F. Lafferty & Co.*, the Third Circuit affirmed the dismissal of fraud, federal securities law, aiding-and-abetting, and professional malpractice claims against an accountant and independent underwriters where the bankruptcy trustee stood in the shoes of a debtor that operated a Ponzi scheme. *See R.F. Lafferty & Co.*, 267 F.3d at 354–60.

### A.  *In pari delicto applies to the Trustee notwithstanding the Plan and the assignment of Investor claims to the Trust.*

The Liquidation Trust stands in the shoes of NRIA and consequently assumes NRIA's fault for operating the Ponzi scheme that injured the Investors. "[I]t is black letter law that 'under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation.'" *In re Dep't 13, Inc.*, No. 23-10691, 2024 WL 958080, at *4 (Bankr. D. Del. Mar. 5, 2024) (citation omitted); *see also Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012) (bankruptcy trustee's claims "subject to the same defenses" that would have been available if instead brought by the debtor). Well-reasoned analyses by courts in other circuits extend this principle to liquidation trusts (also known as litigation trusts) like the Plaintiff. *See e.g.*, *Nisselson v. Lernout*, 469 F.3d 143, 148 (1st Cir. 2006); *In re Verilink Corp.*, 405 B.R. 356, 362–64 (Bankr. N.D. Ala. 2009); *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 366–68 (N.D. Cal. 2015). In other words, a

liquidating trust is "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *R.F. Lafferty & Co.*, 267 F.3d at 356.

It is not material that neither the Liquidation Trust nor the Investors themselves participated in any wrongdoing in connection with the NRIA Ponzi scheme. In *R.F. Lafferty & Co.*, the trustee asserted that post-petition events—the removal of conspirators of a fraud from the debtor's management, and the appointment of an innocent successor to represent the debtor—foreclosed application of the *in pari delicto* defense. The Third Circuit disagreed:

> We emphasize [that] [11 U.S.C.] § 541(a)(1) limits estate property to the debtor's interests "as of the commencement of the case." This phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate. In a qualitative sense, the phrase establishes the estate's rights as no stronger than they were when actually held by the debtor. Congress intended the trustee to stand in the shoes of the debtor and "take no greater rights than the debtor himself had." Therefore, **to the extent [that the trustee] must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from ... wrongdoing** ...
>
> Neither the text of the [Bankruptcy] Code nor its legislative history suggests any exceptions to the principle that the strength of an estate's cause of action is measured by how it stood "as of commencement of the case."

*R.F. Lafferty & Co.*, 267 F.3d at 357–58 (quoting *In re Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285-86 (10th Cir. 1996)) (emphasis added). Similarly, the trustee of a liquidation trust holds property of the debtor's estate as it existed at the commencement of the case and must contend with defenses to claims arising from the debtor's estate at that time. *See In re Mortg. Fund '08 LLC*, No. 11-49803, 2014 WL 543685, at *4 (Bankr. N.D. Cal. Feb. 11, 2014) *aff'd*, 527 B.R. 351 (N.D. Cal. 2015) (citing *R.F. Lafferty & Co.* to hold that *in pari delicto* defense could apply to claims brought by liquidating trustee).

**B.**     ***The Complaint establishes the elements of the in pari delicto defense.***

The Trustee's allegations factually establish that NRIA's management—and by imputation, NRIA itself—bear *at least* "substantially equal responsibility" for the wrongdoing that resulted in injury to the Investors.  Taken as true, the Trustee's allegations as a whole demonstrate that NRIA's management operated a Ponzi scheme, while Wipfli performed general accounting services to NRIA.[2]  NRIA's management is responsible for the Ponzi scheme that they operated—not Wipfli.

Moreover, the actions of NRIA's management are imputed to NRIA itself.  "In the corporate context, a manager's misconduct is usually imputed to the corporation."  *Bondi*, 32 A.3d at 1174 (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (holding "misconduct of managers within the scope of their employment will normally be imputed to the corporation")); *Sevenson Env't Servs., Inc. v. Diversified Royalty Corp.*, No. 08-1386, 2018 WL 5033749, at *5 (D.N.J. Oct. 16, 2018) (citing *Bondi* for same).  Again, the Complaint is rife with evidence of "a manager's misconduct" which Wipfli need not expound on here.  The Trustee makes clear that "NRIA was purportedly managed and operated by Salzano, Scuttaro, Grabato" and other Insiders. (Compl. ¶ 20.)  Their actions to initiate and continue the Ponzi scheme through their control of NRIA are imputed to NRIA.  Because application of *in pari delicto* is facially apparent from the Complaint, the dismissal of the Trustee's claims is appropriate.

## II.    THE COURT SHOULD DISMISS THE TRUSTEE'S SECURITIES LAW CLAIM BECAUSE WIPFLI WAS NOT AN "AGENT" OF NRIA.

Wipfli did not sell securities for NRIA, nor did it materially assist NRIA in selling its securities.  Still, the Trustee alleges that Wipfli is responsible for NRIA's violations of the New

---

[2] Wipfli presumes the Trustee knows Wipfli did not provide accounting services to NRIA and, therefore, that the Trustee is using the term NRIA to include the investor LLCs as well as the parent entity, NRIA.

Jersey Uniform Securities Act ("NJUSA") because Wipfli was allegedly NRIA's "agent" "as [NRIA's] accountants." (Compl. ¶ 97.) The Trustee's claim fails.

### a.    The Trustee incorrectly defines what is an "agent" under the NJUSA.

First, the Court should recognize what the Trustee is *not* arguing. Under the NJUSA, a defendant may be civilly liable for a violation of the NJUSA only if (1) it "offers, sells or purchases" securities, (2) "engages in the business of advising others…as to the value of securities," or (3) is a related entity or agent enumerated in N.J.S.A. § 49:3-71(d) that may be held jointly and severally liable for the security seller's violation of the NJUSA. *See* N.J.S.A. § 49:3-71(a); *see also McKowan Lowe & Co. v. Jasmine, Ltd.*, Nos. 94-5522, 96-2318, 2005 WL 3500032, at *6 (D.N.J. Dec. 20, 2005) (describing who may be held civilly liable under NJUSA). While the Trustee factually alleges the content of the statute permitting liability to the former two categories of entities, it does not allege facts demonstrating that Wipfli offered, sold, or purchased securities, nor engaged in the business of advising others as to the value of securities. Consequently, the Trustee's claim under the NJUSA rises and falls on whether Wipfli was NRIA's "agent," as the Trustee alleges.

The Trustee's interpretation of what constitutes an "agent" under the NJUSA is incorrect under the statutory text. "Agent" is narrowly defined under the NJUSA. An "agent" is "any individual other than a broker-dealer, who **represents** a broker-dealer or issuer in **effecting or attempting to effect** purchases or sales of securities." N.J.S.A. § 49:3-49(b) (emphasis added). The Trustee flips the statute on its head by suggesting that any entity that "materially aids" the seller is an agent of the seller. (*See* Compl. ¶¶ 96 (citing N.J.S.A. § 49:3–71(d).) Applying the Trustee's interpretation of agency, any vendor to NRIA—an IT professional, an Internet provider, a catering service—that provided services to NRIA could constitute an agent. The Trustee's interpretation of the NJUSA ignores both (1) the separate definition of what constitutes an "agent"

under N.J.S.A. § 49:3-49(b) and (2) the NJUSA's limitation of civil liability to "agent[s] **who materially aid**[]" the seller.  *See* N.J.S.A. § 49:3–71(d) (emphasis added).

A court must apply two tests to determine whether an agent is civilly liable for the acts of a security seller—first, it must determine that the defendant is an "agent," and *only if* the defendant is indeed an agent must the court consider whether the agent "materially aid[ed]" the security seller to determine whether that agent can be civilly liable under the NJUSA.  Instead of applying that statutory framework, the Trustee impermissibly collapsed the separate inquiries into a single inquiry by conflating the definition of an "agent" to anyone who "materially aids" the security seller.  Applying these inquiries separately as required by the NUSA, the Trustee's claim fails on the first inquiry.

### b.    *Wipfli was not an agent of NRIA under the NJUSA.*

The Trustee's argument fails because Wipfli was not an "agent" of NRIA.  Wipfli did not "effect[] or attempt[] to effect purchases or sales of securities."  The Trustee does not allege that Wipfli directly communicated with any Investor to market NRIA's securities.  The Trustee does not allege that Wipfli prepared materials about NRIA's securities with the intent that those materials would be used to sell securities to Investors.  The Trustee does not allege that Wipfli represented or opined on the value of NRIA's securities to Investors.  The Trustee merely alleges that Wipfli's preparation of mill-run accounting services *to NRIA*—"financial statements, K-1's, and tax returns"—constitutes "effect" in selling securities.  (Compl. ¶ 97.)  The Trustee makes no effort to explain how this is so.  The Trustee's allegations do not sufficiently allege that Wipfli effected or attempted to effect the purchase or sale of securities.

Case law applying the NJUSA supports Wipfli.  In *Zendell v. Newport Oil Corporation*, 544 A.2d 878 (N.J. Super. Ct. App. Div. 1988), the New Jersey Superior Court, Appellate Division held that a law firm was not liable as a "seller or control agent" under the NJUSA.  The Appellate

Division favorably cited the decision of the United States Supreme Court in *Pinter v. Dahl*, 486

U.S. 622 (1988) in interpreting the substantively similar § 12(1) of the Securities Act of 1933 (15

U.S.C. § 77l(1)):

> [A]lthough the substantial-factor test undoubtedly embraces persons who pass title
> and who solicit the purchase of unregistered securities as statutory sellers, **the test
> also would extend § 12(1) liability to participants only remotely related to the
> relevant aspects of the sales transaction**. Indeed, it might expose securities
> professionals, **such as accountants and lawyers**, **whose involvement is only the
> performance of their professional services, to § 12(1) strict liability for
> rescission. The buyer does not, in any meaningful sense, "purchas[e] the
> security from" such a person.**

*Zendell*, 544 A.2d at 882–83 (quoting *Pinter*, 486 U.S. at 651) (emphasis added).  Applying *Pinter*,

the Appellate Division found that the plaintiff's claims against the law firm were "properly

dismissed."  *Zendell*, 544 A.2d at 882.  Because the law firm in *Zendell* had no contact with the

plaintiffs, did not hold an ownership or investment interest in the venture that was the subject of

the unregistered security, nor acted as a broker, selling agent or underwriter, the Appellate Division

held that the law firm could not be civilly liable as a seller or controller.  Similarly, the Complaint

does not allege Wipfli ever contacted Investors to aid NRIA in selling securities, that Wipfli owned

or invested in NRIA, or acted as a broker, selling agent, or underwriter.  *See also McKowan Lowe

& Co.*, 2005 WL 3500032, at *5–6 (granting summary judgment to auditor of security issuer on

NJUSA claim).

The Sixth Circuit, interpreting Kentucky's iteration of the Uniform Securities Act,

provided an apt example in *Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012).  There, the plaintiff

sued a lawyer that prepared documents necessary for his client's issuance and sale of securities.

*Id.* at 735.  Among several theories, the plaintiff asserted that the lawyer was an "agent" that

"materially aid[ed]" his client in the "sale or purchase of securities."  *Id.* at 738 (citation omitted).

The Sixth Circuit made short work of the plaintiff's argument.  It recognized that the attorney did not effect the purchase or sale of securities by his rendering of professional services, even if those professional services were a "but-for" causation of the security issuer's ability to sell the securities:

> "Effect" in this context means "to carry out (a sale, a purchase)," or more generally "to bring about (an event, a result)." **That language covers salesmen or placement agents who identify potential investors on behalf of the issuer and convince them to buy securities**. An attorney performing ordinary legal work, by contrast, is not hired to "carry out" or "bring about" the sale of securities; the attorney's job is to ensure that any such sale, should the client choose to pursue it, complies with the law. **The attorney's work, it is true, may be a but-for cause of a later sale of securities, but the statute requires more**. It is not enough that the attorney "represents" the issuer in a matter that culminates in the sale of securities; he must represent the issuer "in effecting or attempting to effect" the sale, meaning that carrying out or bringing about the sale must be the job the client hires the attorney to perform. That is not what securities lawyers generally do, and that was not what Durham did even under a view of the evidence most favorable to the plaintiffs.

*Id.* at 738–739 (emphasis added, citations omitted).  The Sixth Circuit collected *ten* cases in other jurisdictions reaching the same result.[3]  *Bennett*, 683 F.3d at 739.  Finally, the court recognized that securities law experts agree with the prevailing view—"professionals such as attorneys **and accountants**[] would not qualify as agents under this definition unless they become involved in the sales efforts."  *Id.* at 739–40 (quoting Jennifer J. Johnson, *Secondary Liability for Securities Fraud: Gatekeepers in State Court,* 36 Del. J. Corp. L. 463, 482–83 (2011) (emphasis added)). Just as an attorney that does not assist with the sale of securities is not an "agent" under the Uniform

---

[3] *Baker, Watts & Co. v. Miles & Stockbridge,* 620 A.2d 356, 368 (Md. Ct. Spec. App. 1993), *superseded on other grounds by rule, see Benway v. Md. Port Admin.,* 989 A.2d 1239, 1245 (Md. Ct. Spec. App. 2010); *see also Ackerman v. Schwartz,* 733 F. Supp. 1231, 1252 (N.D. Ind. 1989), *aff'd in part and rev'd in part on other grounds,* 947 F.2d 841 (7th Cir. 1991); *Excalibur Oil, Inc. v. Sullivan,* 616 F. Supp. 458, 467 (N.D. Ill. 1985); *In re N. Am. Acceptance Corp. Sec. Cases,* 513 F. Supp. 608, 623 (N.D. Ga. 1981); *Adams v. Am. W. Sec., Inc.,* 510 P.2d 838, 844 (Or. 1973); *Rendler v. Markos,* 453 N.W.2d 202, 206 (Wis. Ct. App. 1990); *Klein v. Boyd,* 949 F. Supp. 280, 284 (E.D. Pa. 1996); *CFT Seaside Inv. Ltd. P'ship v. Hammet,* 868 F. Supp. 836, 844 (D.S.C. 1994); *Johnson v. Colip,* 658 N.E.2d 575, 578 (Ind. 1995); *Ward v. Bullis,* 748 N.W.2d 397, 405 (N.D. 2008).

Securities Act, neither is an accountant that similarly does not assist the security issuer. *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728–29 (Minn. 1983), *overruled on other grounds*, *Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11,* 662 N.W.2d 125 (Minn. 2003) (affirming trial court's finding that accountant was not an agent of security issuer under substantively similar Minnesota securities law). The Court should dismiss the NJUSA claim because Wipfli was not an agent of NRIA that can be held civilly liable for NRIA's violations of the NJUSA.

## III.   THE COURT SHOULD DISMISS THE ACCOUNTING MALPRACTICE CLAIM.

The Trustee wants to have its cake and eat it too with its nebulously constructed accounting malpractice claim. On one hand, the Trustee asserts that Wipfli owed a duty of care to NRIA – in whose shoes the Trustee now stands—but claims damages tied to losses by the *Investors*, not NRIA. On the other hand, the Trustee could assert the Investors' claims on their behalf under the Plan, but those claims are barred by New Jersey's Accountant Liability Act. No matter which way the Trustee constructs its claim,[4] the Court must dismiss the accounting malpractice claim.

> ### a.   *The Trustee has not plead sufficient facts to assert an accounting malpractice claim if it is asserting it on behalf of NRIA.*

The Trustee's muddled accounting malpractice claim fails to plead facts supporting multiple elements necessary to assert such a claim under New Jersey law. New Jersey requires four elements to state a claim for professional malpractice: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*, No. 19-cv-20525, 2024 WL 3032578, at *3 (D.N.J. June 17, 2024) (citation omitted).

---

[4] This lack of specificity is not limited to the accounting malpractice claim. The Complaint does not distinguish between claims assigned by the Debtors to the Liquidation Trust from claims assigned by the Investors. In any event, whether the Trustee is asserting the accounting malpractice claim wearing the hat of NRIA or the Investors, the Court should dismiss the claim.

The Trustee concludes that Wipfli "had duties to perform" accounting services "with reasonable care" because it entered into "multiple accounting services contracts to provide services to NRIA[.]" (Compl. ¶ 105.)  The Trustee's pleading begs multiple questions—which contracts, and between whom?  The Trustee defines NRIA as a single entity in one part of its Complaint (*id.* ¶ 1), but later alleges that Wipfli agreed to provide accounting services to unspecified "NRIA LLC entities"—plural—in an engagement letter between Wipfli and *USC.*  (*id.* ¶ 57.)  The Trustee acknowledges that NRIA—now a singular entity again—"was not a party to the engagement letter."  (*Id.*)  The Complaint lacks sufficient clarity to factually establish the foundation for Wipfli's duty of care to NRIA.  *Iqbal*, 556 U.S. at 678 (plaintiff must plead "sufficient fact[s]" to establish a plausible claim).

It is further axiomatic that a defendant is liable for damages stemming from an injury to a *plaintiff* that the defendant proximately causes.  *See Cast Art Indus., LLC v. KPMG LLP*, 3 A.3d 562, 581 (N.J. Super. Ct. App. Div. 2010) (analyzing "an injured party's damages" in relation to an accounting malpractice claim), *overruled on other grounds*, 36 A.3d 1049 (N.J. 2012).  To that end, the Trustee alleges that Wipfli owed *NRIA* a duty of care, and that Wipfli breached this duty of care "by advising *NRIA* contrary to GAAP accounting standards for their personal benefit." (Compl. ¶¶ 105–106 (emphasis added).)  This is logical because, as discussed *supra*, the Trustee is standing in the shoes of NRIA.

However, the Trustee conflates NRIA's damages with the Investors' damages for its malpractice claim.  The Trustee alleges that Wipfli's "breach of accepted accounting principles caused NRIA to suffer significant damages."  (Compl. ¶ 108.)  The Trustee does not specify what NRIA's "significant damages" entail, depriving the accounting malpractice claim of a necessary element.  Tellingly, the preceding allegation asserts that "Wipfli knew that NRIA Investors would

-14-

rely on their accounting services to make significant financial decisions." (*Id.* ¶ 107.) Any claims for damages for the Investors' reliance would accrue to Investors, not NRIA. The implication from the Trustee's complaint is clear—NRIA is asserting damages to compensate the *Investors*, not NRIA, for Wipfli's ostensible negligence.

### b.    The Accountant Liability Act bars the Investors' claims.

If the Trustee was asserting an accounting malpractice claim on behalf of the Investors, that claim is barred under New Jersey's Accountant Liability Act. A party other than an accountant's client may assert an accounting malpractice claim for purportedly negligent[5] services only upon a narrow set of facts:

> Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless…(2) The accountant: (a) **knew at the time of the engagement by the client**, or agreed with the client after the time of the engagement, **that the professional accounting service rendered to the client would be made available to the claimant**, who was **specifically identified** to the accountant in connection with a **specified transaction** made by the claimant; (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service….

N.J.S.A. § 2A:53A-25(b).

At best, the Trustee's allegations satisfy only one prong of the three-prong statutory test. While the Trustee alleges (generally, without any clear factual support beyond inference) that Wipfli knew that Investors would rely on Wipfli's accounting services (Compl. ¶ 107), the Trustee does not allege (1) that each Investor asserting a claim through the Trustee was "specifically

---

[5] Perhaps due to the narrow circumstances in which New Jersey permits third parties to assert accounting malpractice based upon an accountant's negligence, the Trustee is careful not to explicitly tie its claim to an assertion of negligence by Wipfli. Nonetheless, the Complaint asserts that Wipfli was negligent because Wipfli owed NRIA a duty of reasonable care and that Wipfli breached that duty—classic elements of a negligence action. *See e.g. Fernandes v. DAR Dev. Corp.*, 119 A.3d 878, 885–86 (N.J. 2015) (listing elements of negligence claim).

identified" to Wipfli, (2) that Wipfli knew of each "specified transaction" by each Investor for which the Investors relied upon Wipfli, or (3) that Wipfli directly expressed to each Investor that it understood the Investor would rely upon Wipfli's accounting services.  The Complaint lacks facts to plausibly show that Wipfli *agreed* that the Investors could rely upon Wipfli's work product to make financial decisions, and was not just merely aware of that possibility.  *Cast Art Indus.*, 36 A.3d at 1059–60 (awareness of third party's intended reliance is not sufficient to support a claim as New Jersey statute requires an accountant's agreement to the reliance).  Additionally, the Complaint alleges that Wipfli provided only accounting services, not audits or attest services upon which third parties typically attempt to allege reliance.  *See id.* (analyzing third-party reliance on auditor work product).  Without these allegations, the Trustee's accounting malpractice claim must fail.

## IV.    THE TRUSTEE FAILS TO ALLEGE SUFFICIENT FACTS TO MEET THE HEIGHTENED PLEADING STANDARD FOR FRAUD CLAIMS UNDER FED. R. CIV. P. 9(B).

The Trustee's vague allegations run afoul of the heightened pleading standard for fraud claims.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "In other words, plaintiffs asserting fraud claims must specify "'the who, what, when, where and how; the first paragraph of any newspaper story.'" *Duraport Realty Three, LLC v. Trinity Prods., Inc.*, No. 12-CV-2305, 2013 WL 775537, at *3 (D.N.J. Feb. 28, 2013) (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). The purpose of Rule 9(b)'s heightened pleading requirement is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogation on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010).

The Trustee misses the mark on several of the necessary particulars to state a fraud claim. The Trustee fails to allege "who" committed the fraud by stating an unspecific group of individuals—"Insiders"—falsified and concealed information to an unspecified group of individuals—"Investors." (Compl. ¶¶ 82, 85–86.) This generality alone is sufficient to require dismissal of the Trustee's fraud claim. *See Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012) (dismissing fraud claim under Rule 9(b) for lack of sufficient detail where plaintiff "lump[ed] the two Defendants together" to refer to them collectively). The Trustee similarly fails to allege the "when" and "how" of the purported fraud by referring generally to Insiders' falsification of financial and bank statements and concealment of revenue (Compl. ¶ 82.) Moreover, any of the limited attempts to link Wipfli to the Insiders' fraud fall well short of the strict requirements of Rule 9(b). *See e.g.* (*id.* ¶ 68) (asserting Wipfli "lent their professional services and the imprimatur of a multi-national accounting firm to lend credibility to the illicit Ponzi scheme"); (*id.* ¶ 83) (referencing Wipfli's "substantial assistance, through accounting activities"). Significantly, it is difficult to discern from the allegations of the Complaint whether the Trustee actually alleges Wipfli provided accounting services to NRIA, which it did not, or whether the repeat references to NRIA are shorthand for the various NRIA investor LLCs. Rule 9(b) requires more than the Trustee alleges, warranting dismissal.

## V.    THE TRUSTEE'S UNJUST ENRICHMENT CLAIM DEPENDS UPON THE FRAUD CLAIMS – BECAUSE THOSE CLAIMS FAIL, SO TOO DOES THE UNJUST ENRICHMENT CLAIM.

The Trustee claims that it would be unjust to permit Wipfli to retain payments made by NRIA for Wipfli's accounting services. The Trustee asserts Wipfli's retention of the payments is unjust because Wipfli's accounting services allegedly "aided and abetted the Insiders' fraud" to the detriment of NRIA, its creditors, and Investors. (Compl. ¶ 113.) The Court's dismissal of the aiding and abetting fraud claim and the state-law securities claim obviates any fraudulent conduct

or wrongdoing that would support the unjust enrichment claim. Consequently, the dismissal of those claims necessitates the dismissal of the unjust enrichment claim.

## **CONCLUSION**

For the reasons stated above, the Court should grant Wipfli's Motion to Dismiss.

Dated: August 9, 2024

*/s/ Jennifer Fiorica Delgado*
Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
Telephone (973) 597-2500
E-mail: metkin@lowenstein.com
E-mail: nfulfree@lowenstein.com

Jennifer Fiorica Delgado, Esq.
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone (212) 262-6700
E-mail: jdelgado@lowenstein.com

GODFREY & KAHN, S.C.
Daniel T. Flaherty (*pro hac vice* application forthcoming)
Daniel J. Blinka (*pro hac vice* application forthcoming)
Nicholas J. Bezier (*pro hac vice* application forthcoming)
833 E. Michigan St., Ste. 1800
Milwaukee, WI 53202
Phone: 414-273-3500
E-mail: Dflaherty@gklaw.com
E-mail: Dblinka@gklaw.com
E-mail: Nbezier@gklaw.com

*Counsel to Defendant, Wipfli LLP*