**ICE MILLER LLP**
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
George A. Gasper, Esq. (admitted *pro hac vice*)
Jessa DeGroote, Esq.
Libby Moyer, Esq. (admitted *pro hac vice*)
1500 Broadway, Suite 2900
New York, NY 10036
Phone: 212-835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC*
*in its capacity as Liquidation Trustee of the*
*AIRN Liquidation Trust*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |
| In re:<br><br>AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>WIPFLI LLP and DOES 1-100,<br><br>Defendant. | Adv. Pro. No. 24-01456 |

### PLAINTIFF'S OPPOSITION TO
### DEFENDANT WIPFLI LLP'S MOTION TO DISMISS COMPLAINT

# Table of Contents

BACKGROUND ............................................................................................................7

I.    Debtors' Chapter 11 Cases .............................................................................7
II.   Factual and Procedural Background ..............................................................8

MOTION TO DISMISS STANDARD.......................................................................11

ARGUMENT .............................................................................................................13

I.    The doctrine of *in pari delicto* does not require dismissal of any cause of action in the Complaint.....................................................................................................13

a.    As a preliminary matter, *in pari delicto* is not applicable to claims by the Investors. ..................................................................................................................14
b.    *In pari delicto* is not applicable to the Complaint on its face because the Complaint properly pleads a change in corporate management before the Petition Date...........15
c.    The Complaint as pled does not establish the applicability of *in pari delicto* on its face because the Complaint properly pleads that the fraudsters' conduct benefited Insiders personally and not the Debtors.................................................................19
d.    Even if the face of the Complaint contains facts that may support its application, Wipfli's assertion of *in pari delicto* is premature. ......................................21

II.   Count II of the Complaint sufficiently pleads aiding and abetting securities fraud. .....22

a.    The elements of aiding and abetting securities fraud are pled with particularity. .....22
b.    The Complaint sufficiently alleges that Wipfli is an "agent" under N.J.S.A. § 49:3-49(b). ................................................................................................................25

III.  Count III of the Complaint sufficiently pleads accounting malpractice on behalf of the Debtors.................................................................................................................28
IV.   Count III of the Complaint sufficiently pleads accounting malpractice on behalf of the Investors...............................................................................................................30
V.    The Complaint sufficiently pleads facts necessary for the heightened pleading standard for fraud claims.....................................................................................................32
VI.   Count IV of the Complaint sufficiently pleads unjust enrichment. ...............................35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bennett v. Durham*,
   683 F.3d 734 (6th Cir. 2012) ................................................27

*Bondi v. Citigroup, Inc.*,
   No. BER-L-10902-04, 2005 WL 975856 (N.J. Super. Ct. Law Div. Feb. 28,
   2005) ................................................13

*In re California TD Investments, LLC*,
   489 B.R. 124 (Bankr. C.D. Cal. 2013) ................................................21

*Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Martin Oring and
   Searchlight Mins. Corp.*,
   441 F. Supp. 3d 23 (D.N.J. 2020) ................................................23

*In re CBI Holding Co., Inc.*,
   529 F.3d 432 (2d Cir. 2008)................................................20

*Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*,
   2024 WL 3032578 (D.N.J. 2024) ................................................29, 30

*In re CTE 1 LLC*,
   No. 19-30256 (VFP), 2023 WL 5257940 (Bankr. D.N.J. Aug. 11, 2023) ................................................21

*Forman v. Cornerstone Realty Agency, LLC*,
   No. 06–02123 (DHS), 2006 WL 2990467 (Bankr. D.N.J. 2006) ................................................33

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)................................................11

*In re Heidt*,
   626 B.R. 777 (Bankr. D.N.J. 2021) ................................................11, 12

*Inventory Recovery Corp. v. Gabriel*,
   No. 2:11-cv-01604, 2012 WL 2990693 (D.N.J. Jul. 20, 2012) ................................................32

*Jenson v. Touche Ross & Co.*,
   335 N.W.2d 720 (Minn. 1983)................................................27

*Kaufman v. i-Stat Corp.*,
   754 A.2d 1188 (N.J. 2000)................................................23

*Kirschner v. Wachovia Capital Markets, LLC*,
   No. 08-1518, 2009 WL 10673082 (W.D. Pa. 2009)................................................17, 18

*In re Le-Nature's Inc.*,
No. 2:09-MC-00162, 2009 WL 3526569 (W.D. Pa. Oct. 23, 2009) ......................................16

*In re Le-Nature's Inc.*,
No. 2:09-MC-00162, 2009 WL 3571331 (W.D. Pa. Sept. 16, 2009) ...............................16, 18

*In re MacGregor Sporting Goods, Inc.*,
199 B.R. 502 (Bankr. D.N.J. 1995) ......................................................................................13

*McAdam v. Dean Witter Reynolds, Inc.*,
896 F.2d 750 (3d Cir. 1990)...........................................................................................13, 21

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*,
904 A.2d 775 (N.J. Super. Ct. App. Div. 2006).................................................................15, 32

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
No. 2005 WL 3500032 (D.N.J. Dec. 20, 2005) ......................................................................27

*In re Modell's Sporting Goods, Inc.*,
No. 20-14179 (VFP), 2023 WL 2961856 (Bankr. D.N.J. Apr. 14, 2023) ...............................32

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir. 2003)...................................................................................................12

*NCP Litig. Tr. v. KPMG LLP*,
901 A.2d 871 (N.J. 2006).......................................................................................................22

*In re NJ Affordable Homes Corp.*,
Case No. 05-60442 (DHS), 2013 WL 6048836 (Bankr. D.N.J. Nov. 8, 2013).............. *passim*

*In re Norvergence, Inc.*,
405 B.R. 709 (Bankr. D.N.J. 2009) ............................................................................13, 21, 33

*In re NorVergence, Inc.*,
424 B.R. 663 (Bankr. D.N.J. 2010) ..................................................................................12, 13

*Off. Comm. of Unsecured Creditors of Allegheny Health, Educ. & Rsch. Found. v. PricewaterhouseCoopers, LLP*,
No. 07-1397, 2008 WL 3895559 (3d Cir. 2008) ....................................................................13

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)...................................................................................................17

*In re Palm Beach Fin. Partners, L.P.*,
588 B.R. 633 (Bankr. S.D. Fla. 2018) ....................................................................................18

*Pinter v. Dahl,*
    486 U.S. 622 (1988)..........................................................................................................15

*Resolution Tr. Corp. v. del Re Castellett,*
    No. 92–4635(AMW), 1993 WL 719764 (D.N.J.1993)............................................29

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 880 (3d Cir. 1975)..............................................................................................19

*Scholes v. Lehmann,*
    56 F.3d 750 (7th Cir. 1995) ..............................................................................................14

*Sevenson Env't Servs., Inc. v. McDonald,*
    No. CV 08-1386, 2015 WL 13767999 (D.N.J. Sept. 14, 2015) ...........................21

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir.1984)................................................................................................12

*Stella v. Dean Witter Reynolds, Inc.,*
    574 A.2d 468 (N.J. Super. Ct. App. Div. 1990).................................................14, 15

*Stevens v. Liberty Packing Corp.,*
    111 N.J. Eq. 61 (N.J. Ch. 1932)........................................................................................23

*In re Suprema Specialties, Inc. Secs. Litig.,*
    438 F.3d 256 (C.A.3 (N.J.), 2006)...................................................................................30

*In re U.S. Mortgage Corp.,*
    491 B.R. 642 (Bankr. D.N.J. 2013) .................................................................................21

*United States of America v. Salzano and Grabato*
    (D.N.J. Case No. 22-00690, Docket No. 19) ...............................................16, 19

*United States of America v. Thomas Nicholas Salzano,*
    No. 2:22-cr-00690–EP-1 (D.N.J.)...................................................................................34

*Zendell v. Newport Oil Corp.,*
    544 A.2d 878 (N.J. Super. Ct. App. Div. 1988)..............................................26, 27

**Statutes**

Securities Act of 1933, 15 U.S.C. § 77*l*...................................................................26, 27

N.J.S.A. § 49:3-49(b)...........................................................................................................25, 26

N.J.S.A. § 49:3-49(h)...................................................................................................................26

N.J.S.A. § 49:3-71............................................................................................................................8

N.J.S.A. § 49:3-71(a) ................................................................................................................23, 24

N.J.S.A. § 49:3-71(d) ...............................................................................................................23, 26

**Other Authorities**

Bankruptcy Rules Rule 7008(a) ........................................................................................................12

Federaal Rule of Civil Produce Rule 8 .....................................................................12, 29, 30, 31

Federal Rule of Civil Procedure 9(b) ................................................................................... *passim*

Federal Rule of Civil Procedure Rule 12(b)(6) ......................................................................11, 21

AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the AIRN Liquidation Trust (the "Liquidation Trust") established under the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Docket No. 3256] (as amended and supplemented, the "Plan") and the order confirming same [Docket No. 3599], by and through its undersigned counsel, hereby files this opposition (the "Opposition") to the *Defendant Wipfli LLP's Motion to Dismiss Complaint* [Docket No. 6] (the "Motion") and its accompanying Memorandum in Support ("Mem.") filed by Defendant Wipfli LLP ("Wipfli"). In support of this Opposition, the Liquidation Trustee states as follows:

## **BACKGROUND**

### I.    **Debtors' Chapter 11 Cases**

On June 7, 2022, (the "Petition Date"), National Realty Investment Advisors, LLC ("NRIA"), along with over 130 affiliated entities (collectively with NRIA, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. The Debtors' cases were jointly administered under Case No. 22-14539.[1] On June 30, 2022, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). *See* Notice of Appointment [Docket No. 94]. Following several months of negotiations, the Debtors and the Committee jointly filed the Plan on July 25, 2023. The Court entered its order confirming the Plan on August 10, 2023. The Plan became effective on August 25, 2023 [Docket No. 3711].

Pursuant to Article IV.F of the Plan, the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss,

---

[1]Unless context dictates otherwise, all docket number references herein relate to Case No. 22-14539, the underlying bankruptcy case.

or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan). Accordingly, the Liquidation Trustee has the authority and responsibility to pursue claims on behalf of both the Debtors' and Investors, as well as to investigate litigation targets. In accordance with the Liquidation Trustee's duties, the Liquidation Trustee and its retained professionals have and will continue to diligently investigate the Debtors' affairs and identify those who benefited from or helped perpetuate the Insiders' fraudulent scheme.

## II.    **Factual and Procedural Background**

On June 7, 2024, the Liquidation Trustee filed its complaint commencing this adversary proceeding (the "Complaint") against Wipfli seeking to hold Wipfli accountable for the financial harm its misconduct caused the Debtors and the Investors.[2] The Complaint alleges the following counts: (I) aiding and abetting fraud; (II) aiding and abetting securities fraud under N.J. Rev. Stat. § 49:3-71; (III) accounting malpractice; and (IV) unjust enrichment.

The Complaint is filled with detailed factual allegations about the Ponzi scheme and related bad acts committed by the Insiders, who include the Debtors' managers and affiliates, and Wipfli. *See generally* Compl. And the Complaint specifically cites both the Summary Cease and Desist Order [Docket No. 60] issued by the New Jersey Bureau of Securities and the Administrative Consent Order [Docket No. 1651] entered by this Court. Compl. at ¶ 15. These allegations illustrate the underlying and pervasive fraud, pled in detail, perpetrated by the Insiders and substantially assisted by Wipfli. Wipfli does not appear to dispute that the Debtors were operated by Insiders as a Ponzi scheme nor could it as Thomas Nick Salzano ("Salzano"), one of the Insiders and masterminds of the fraud, has now pled guilty to the criminal charges pending against him,

---

[2]All capitalized terms not otherwise defined herein shall have the definition given to them in the Complaint.

admitting to operating the Debtors as a Ponzi scheme. Instead, Wipfli asserts that the scheme—and its role in it—was not adequately plead.

The Insiders operated the Debtors for their personal benefit, plunging the Debtors into financial ruin and eventually bankruptcy while making material misrepresentations to induce Investors to invest millions into the Ponzi scheme. As alleged in the Complaint, the Insiders used a variety of tactics to attract and retain Investors and keep the fraud afloat for as long as possible. To give the illusion of a safe investment, the Insiders, who include Salzano's son, Dustin Salzano, and John Farina, the owners of USC and Premier, offered guarantees to Investors which guaranteed that the properties would be built on time and rented at a price to cover the Investor's costs or allegedly independent entities, USC or Premier, would reimburse the Investors. *Id.* at ¶¶ 17-18. In actuality, the Insiders caused the Debtors, using Investor funds as the scheme was not profitable, not USC or Premier, to pay the Investors when the guarantees were inevitably breached by USC or Premier – neither of which were actually independent from the fraudulent operation. *Id.* For its part, Wipfli assisted the Insiders in attracting and retaining Investors by, among other things, advising the Insider on how to book expenses to change the perception of the financial strength of Debtors' entities. *Id.* at ¶¶ 66-67.

The governing documents and PPMs provided to potential and existing Investors prohibited the funds of the specific entity in the PPM from being commingled with the funds of any other entity. Wipfli received the PPMs and was asked to provide financial guidance regarding the PPMs. *Id.* at ¶¶ 62-63. Despite representing to Investors that funds were segregated, the Insiders commingled funds among different Debtor entities, making it almost impossible for an Investor to track their investment and understand the financial state of the company they invested in. *See, e.g.*, Compl. at ¶¶ 43-47. Wipfli enabled this aspect of the fraud when, despite having possession of the

offering documents prohibiting this practice, it ignored the evidence of commingling of funds in the individual entities' financial records. *Id.* at ¶ 75. Moreover, Wipfli actively furthered the commingling of funds when it reimbursed NRIA at the parent level for funds originally paid to Wipfli by the individual, subsidiary Debtor entities. *Id.* at ¶¶ 75-76. The Insiders also failed to disclose in the PPMs to Investors many conflicts of interests among the employees, contractors, and vendors of the Debtors; these conflicts of interest resulted in the Insiders causing the Debtors to, among other things, pay inflated development fees and unearned salaries to friends and family members. *Id.* at ¶¶ 30-33.

As detailed in the complaint, USC, along with its owners Dustin Salzano and John Farina, played a substantial role in facilitating the fraud by, among other things, opening and operating bank accounts for individual Debtor entities and commingling and diverting funds to other Debtor entities and USC. *Id.* at ¶¶ 42-47. Wipfli reviewed bank statements of individual Debtor entities that were maintained and provided to it by USC, including the bank account for 2031 Lombard which the Insiders were obviously using as a central account to comingle funds since the statements showed patterns of large incoming transfers from NRIA and subsequent transfers to other individual Debtor entities. *Id.* at ¶ 68. Yet Wipfli conducted the accounting as if this were all above board. *Id.* at ¶¶ 68-70.

The Insiders, recognizing their inability to keep the scheme afloat without a new structure, created the Fund to "roll up" Investors into a pooled fund enticing existing Investors to do so by offering extraordinary bonuses which ultimately added more than $50 million in losses to the Fund, diluted the holdings of existing Investors, eliminated the Insiders' obligations related to the guarantees, and allowed the Insiders to hide the fraud more easily. *Id.* at ¶¶ 19. Wipfli knowingly assisted with the Fund "roll up" and accounting despite understanding the financial implications

to Investors. *Id.* at ¶ 68. Further, in order to consistently bring in Investor cash to pay existing Investors, the Insiders caused the Debtors to spend more than 10% of the money received from Investors on advertising. *Id.* at ¶¶ 27-28. Wipfli was aware of the Insiders' advertising spendings and unsustainable guaranteed returns. *Id.* at ¶ 71.

In short, without Wipfli's substantial assistance, the Insiders could not have facilitated their massive Ponzi scheme, inducing thousands of unwitting Investors into investing into a fraud for the personal benefit of the Insiders and their affiliates. As Wipfli was aware, its assistance in the fraud made the individual properties, and thus NRIA as a whole, look more profitable, convincing potential Investors to invest and existing Investors to stay and roll over their investment into the Fund. As detailed below, Wipfli's substantial assistance to the Insiders caused significant financial harm to the Debtors and Investors and furthered the life of and damage caused by the fraud.

## MOTION TO DISMISS STANDARD

As this Court has noted, "[o]n a motion to dismiss, this court must assume the truth of all allegations in [the] complaint, their reasonable inferences, and any documents incorporated by reference therein." *In re NJ Affordable Homes Corp.*, Case No. 05-60442 (DHS), 2013 WL 6048836, at *3 (Bankr. D.N.J. Nov. 8, 2013). To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *In re Heidt*, 626 B.R. 777, 788 (Bankr. D.N.J. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (reversing district court's granting of defendant's motion to dismiss finding plaintiff alleged sufficient facts to state plausible claim).

To determine whether a complaint is plausible on its face, a court must draw on its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief. *In re Heidt*, 626 B.R. at 788. This standard requires a showing

of "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233–34 (3d Cir. 2008)). In other words, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is entitled to relief." *In re NorVergence, Inc.*, 424 B.R. 663, 686 (Bankr. D.N.J. 2010) (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)).

Pursuant to Federal Rule of Civil Procedure 8(a) as made applicable by Rule 7008(a) of the Bankruptcy Rules, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed. R. Civ. Pr. 8(a)(2), in order to give the defendant notice of the claim and the grounds the claim is based upon. *See In re NorVergence, Inc.*, 424 B.R. at 687 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Under this standard, a plaintiff is not required to "set out in detail the facts upon which he bases his claim, so long as he gives the defendant(s) fair notice of the claim and the reasons giving rise to the claim to permit a defendant to answer and to prepare for trial." *In re NorVergence, Inc.*, 424 B.R. at 687 (internal citations omitted).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud or mistake, however "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading requirement of Rule 9(b) "is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003) (reversing district court's dismissal of plaintiff's complaint). Although generally fraud allegations of date, place, and manner are used to meet the Rule 9(b) standard, a plaintiff is free to use "alternative means of injecting precision and some measure of substantiation" into a fraud allegation. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). It is customary in the context of bankruptcy to

interpret Rule 9 liberally, particularly when, like here with the Liquidation Trustee asserting claims

on behalf of Investors, a third-party outsider to the fraudulent transaction is bringing the action, *In

re NorVergence, Inc.*, 424 B.R. at 688; *see also In re MacGregor Sporting Goods, Inc.*, 199 B.R.

502, at 514–15 (Bankr. D.N.J. 1995) ("Rule 9(b) should be interpreted liberally, particularly when

the trustee . . . is bringing the action.").

## **ARGUMENT**

### I.    **The doctrine of *in pari delicto* does not require dismissal of any cause of action in the Complaint.**

Wipfli incorrectly asserts that the doctrine of *in pari delicto* requires dismissal of every

claim in the Complaint. As to the Debtors, the assertion of *in pari delicto* is neither timely nor

appropriate because the affirmative defense is premature and cannot be established on the face of

the Complaint. As to the Investors, the doctrine of *in pari delicto* similarly does not apply.

The doctrine of *in pari delicto*, shortened from the phrase *in pari delicto potior est conditio

defendentis*, generally means that "[i]n a case of equal or mutual fault . . . the position of the

[defending] party . . . is the better one." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756

(3d Cir. 1990) (alterations in original) (quoting Black's Law Dictionary 791 (6th ed. 1990))

(affirming the district court's finding that *in pari delicto* did not apply where the plaintiff did not

bear "at least substantially equal responsibility for the underlying illegality"); *see also Off. Comm.

of Unsecured Creditors of Allegheny Health, Educ. & Rsch. Found. v. PricewaterhouseCoopers,

LLP*, No. 07-1397, 2008 WL 3895559, at *5 (3d Cir. 2008) ("*In pari delicto* is a murky area of

law. It is an ill-defined group of doctrines that prevents courts from becoming involved in disputes

in which the adverse parties are equally at fault.").

Because *in pari delicto* is an affirmative defense, Wipfli bears the burden of persuasion. *In

re Norvergence, Inc.*, 405 B.R. 709, 749 (Bankr. D.N.J. 2009); *see also Bondi v. Citigroup, Inc.*,

No. BER-L-10902-04, 2005 WL 975856, at *14 (N.J. Super. Ct. Law Div. Feb. 28, 2005). There are several exceptions to the *in pari delicto* affirmative defense that preclude any imputation of wrongdoing onto a trustee, such as the adverse interest exception which "bars imputation of fraudulent conduct if the officer's interests were adverse to, and not for the benefit of, the corporation." *In re NJ Affordable Homes*, 2013 WL 6048836, at *24. Likewise, as a matter of public policy, "courts may disallow the *in pari delicto* defense if its invocation would produce an inequitable result." *Id.*  For example, "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (citing *McCandless v. Furlaud*, 296 U.S. 140, 160 (1935)). And the "victim of a fraud is not *in pari delicto* with his victimizer, not even if the victim was deceived into thinking that he was defrauding a third-party." *Stella v. Dean Witter Reynolds, Inc.*, 574 A.2d 468, 477–78 (N.J. Super. Ct. App. Div. 1990) (finding that "it would be a perversion of public policy" to apply *in pari delicto* against an investor where an investor was induced by a broker to invest in a fund that did not exist which involved the investor endorsing checks to authorize transfers into the nonexistent fund).

        **a.**        **As a preliminary matter, *in pari delicto* is not applicable to claims by the Investors.**

The Complaint asserts claims both on behalf of the Debtors and on behalf of Investors who contributed claims under the Plan. Wipfli has not, and cannot, cite to any allegations in the Complaint that would support an argument that the Investors were *in pari delicto* with the Insiders.

Under the Plan, "all Contributed Claims [are] irrevocably contributed to the Liquidation Trust" and are considered authorized "Liquidation Trust actions for all purposes." Plan at 37–38. Accordingly, the Liquidation Trustee is empowered and in fact obligated to pursue and litigate all causes of actions relating to the Contributed Claims. Plan at 14, 24. Under the Plan, the Liquidation Trustee can assert on behalf of Investors, among other things, "(a) all Causes of Action based on,

arising out of, or related to the marketing, sale, and issuance of any investments in the Debtors, including any private placement memorandum, Joint Venture Agreements, or guarantees; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) *all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls;* (d) *all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct* described in the Disclosure Statement, including in respect of any alleged fraud related thereto. . . ." Plan at 4–5 (emphasis added).

Under New Jersey law, the "victim of a fraud is not *in pari delicto* with his victimizer, not even if the victim was deceived into thinking that he was defrauding a third-party." *Stella*, 574 A.2d at 477–78 (holding that *in pari delicto* was not a defense to investor claims); *see also Pinter v. Dahl*, 486 U.S. 622, 641 n. 17 (1988).

For example, the aiding and abetting fraud claim in Count I of the Complaint is one that Investors have assigned to the Liquidation Trust and that they could have brought independently of the Debtors. New Jersey law recognizes aiding and abetting fraud as a separate, cognizable civil cause of action that can be brought by victims of the fraud. *See State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super. Ct. App. Div. 2006). As detailed in the Complaint, the Investors were directly damaged by the Ponzi scheme and Wipfli's conduct. *See, e.g.*, Compl. at ¶ 78. And as is set forth below, aiding and abetting fraud is properly pled in the Complaint. On this point, the Motion should be denied.

        b.     *In pari delicto* **is not applicable to the Complaint on its face because the Complaint properly pleads a change in corporate management before the Petition Date.**

After Salzano's arrest, an independent manager was brought in to operate Debtors, various legal counsel were brought in to provide advice and guidance, and the Debtors' entities were rid of the bad actors well before such time that it was determined Debtors could not be saved, and the independent manager elected to file bankruptcy. *See, e.g.*, Compl. at ¶ 15 (citing Complaint filed in *Securities and Exchange Commission v. National Realty Investment Advisors LLC, et al.* (D.N. J. Case No 22-06066, Docket No. 1)); Indictment filed in *United States of America v. Salzano and Grabato* (D.N.J. Case No. 22-00690, Docket No. 19); Summary Cease and Desist Order (Case No. 22-14539, Docket No. 60); When there is a change in corporate management before a corporate debtor's filing for bankruptcy, *in pari delicto* is not an applicable defense for claims brought by a trustee because there is no longer any wrongdoing to be imputed to the trustee. *In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3571331, at *6 (W.D. Pa. Sept. 16, 2009). The change in management "rid[s] itself of corrupting influence" and results in a "custodian who was not engaged in any sort of fraudulent conduct" with "no fraud to impute." *Id.*; *see also In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3526569, at *2 (W.D. Pa. Oct. 23, 2009) (reaffirming that based on the new management's appointment "there was nothing to impute to the bankruptcy trustee at the time the bankruptcy was filed").

The Insiders were expelled from Debtors' management team before the Debtors' bankruptcy filings. Compl. at ¶ 15 (citing Complaint filed in *Securities and Exchange Commission v. National Realty Investment Advisors LLC, et al.* (D.N. J. Case No 22-06066, Docket No. 1)); Indictment filed in *United States of America v. Salzano and Grabato* (D.N.J. Case No. 22-00690, Docket No. 19); Summary Cease and Desist Order (Case No. 22-14539, Docket No. 60); *see also* Compl. at ¶¶ 20, 23 (pleading that NRIA was formerly managed by the Insiders). On or around November 1, 2021, the Insiders were replaced by Brian Casey ("Mr. Casey") and Casey Group,

16

Ltd. (collectively with Mr. Casey, the "Casey Group"), and with the turnover, the Casey Group was appointed as a manager, assuming broad control over the Debtors to start the process of remediating the existing management conflicts. *See* Compl. at ¶ 15 (citing Summary Cease and Desist Order (Case No. 22-14539, Docket No. 60)) and Declaration in Support of Chapter 11 Petitions and First Day Pleadings, ¶¶ 14-16, 19 (Case No. 22-14539, Docket No. 16). As a matter of law, because the Insiders were replaced by independent management before the Petition Date, *in pari delicto* is unavailable.

Wipfli's reliance on *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001) in support of its *in pari delicto* argument is misplaced. *Lafferty* is inapplicable where bad actors are expelled from the debtor *before* the bankruptcy petition is filed. *See, e.g.*, *Kirschner v. Wachovia Capital Markets, LLC*, No. 08-1518, 2009 WL 10673082, at *7 (W.D. Pa. 2009) ("Unlike the facts in *Lafferty*, Le-Nature's essentially rid itself of corrupt influence of certain corporate officers prior to the bankruptcy filing."); *see also* Mem. at 7 (recognizing that *Lafferty* declined to allow "post-petition events" to foreclose application of *in pari delicto*). Additionally, *Lafferty* applied the "sole actor" exception to the adverse interest exception of *in pari delicto* in finding that the bad actor's conduct could be imputed to the trustee. *Lafferty*, 267 F.3d at 359 ("The general principle of the 'sole actor' exception provides that, if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests."). The sole-actor exception, and thus *Lafferty*, is not applicable here where multiple Insiders formerly managed the Debtors and were expelled pre-petition. *See, e.g.*, Compl. at ¶ 15 (citing Summary Cease and Desist Order (Case No. 22-14539, Docket No. 60)) and Declaration in Support of Chapter 11 Petitions and First Day Pleadings, ¶¶ 14-16, 19 (Case No. 22-14539, Docket No. 16).

The *Le-Nature's* case aligns closely with the Liquidation Trustee's case here and applies Pennsylvania *in pari delicto* law "which is almost indistinguishable to the doctrine as it exists under New Jersey law." *In re NJ Affordable Homes*, 2013 WL 6048836, at *23 (citing *Lafferty*, 267 F.3d at 354). In *Le-Nature's*, the liquidation trustee of the Le-Nature's Liquidation Trust asserted multiple claims against various organizations for their role in a Ponzi scheme. *In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3571331, at *2 (W.D. Pa. Sept. 16, 2009). The defendants worked with the former management of Le-Nature's to "engage[] in a form of a 'Ponzi' scheme—constantly raising money and incurring ever-increasing debts to refinance investors while cultivating the illusion of a legitimate profit-making business." *Id.* And after the minority shareholders learned of the Ponzi scheme, they quickly worked to appoint a custodian five days before the commencement of Le-Nature's involuntary bankruptcy proceedings. *Id.* at *3.

In finding the temporal succession of management critical to the applicability of the *in pari delicto* defense, the *Le-Nature's* Court held that the company had "essentially rid itself of corrupt influence of certain corporate officers prior to the bankruptcy filing . . . [b]ecause KCZ was appointed before the filing of the bankruptcy case, and because Kirschner stepped into the shoes of Le-Nature's which was then being run by this custodian who was not engaged in any sort of fraudulent conduct, [so] there is no fraud to impute to Kirschner." *Id.* at *6. Le-Nature's was "no longer being operated by a corrupt management team . . . due to the minority shareholders who . . . replace[d] the leadership" thus, there was "nothing to impute at the time of the bankruptcy filing, and accordingly, the in pari delicto doctrine cannot apply." *Id.*; *see also Kirschner*, 2009 WL 10673082, at *7; *In re Palm Beach Fin. Partners, L.P.*, 588 B.R. 633, 647 (Bankr. S.D. Fla. 2018) (holding that "[b]ecause the wrongdoers were removed from control of the debtors long before

this bankruptcy case was filed on the petition date the debtors would not have been subject to the *in pari delicto* defense and so neither is the plaintiff").

The change in management here mirrors closely with *Le-Nature's*, disrupting the temporal succession between the Insiders and the Liquidating Trustee. The case is even more compelling here because the change in management started months before the Petition Date instead of a mere five days. Compl. at ¶ 15 (citing Complaint filed in *Securities and Exchange Commission v. National Realty Investment Advisors LLC, et al.* (D.N. J. Case No 22-06066, Docket No. 1)); Indictment filed in *United States of America v. Salzano and Grabato* (D.N.J. Case No. 22-00690, Docket No. 19); Summary Cease and Desist Order (Case No. 22-14539, Docket No. 60); *see also* Compl. at ¶¶ 20, 23.

To hold that the *in pari delicto* defense could apply here, regardless of the break in temporal succession, would expand the *in pari delicto* defense's application to absurd results and reward Wipfli for executing its fraud before new management had a chance to prevent them. Given the change in management, the *in pari delicto* defense is inapplicable to the Liquidation Trustee and the claims raised in the Complaint.

> **c.      The Complaint as pled does not establish the applicability of *in pari delicto* on its face because the Complaint properly pleads that the fraudsters' conduct benefited Insiders personally and not the Debtors.**

Pursuant to Third Circuit precedent, the fraud of an officer or agent of a corporation may be imputed onto the corporation only "when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation." *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 880, 884 (3d Cir. 1975). And "exceptions exist to the imputation of fraud and, therefore, to the application of the doctrine of *in pari delicto*." *In re NJ Affordable Homes*, 2013 WL 6048836, at *24. As noted above, the adverse interest exception "bars imputation of fraudulent conduct if the officer's interests were adverse to, and not for the benefit of, the corporation." *Id.*

The Complaint alleges that Salzano, Grabato, and other Insiders conducted a fraud for their own individual benefit—their interests were adverse to and did not benefit the Debtors or the Investors. For example, the Complaint alleges, among other things, that:

    a.  The Insiders, Salzano, Grabato, and their family members, used Debtors and Investor contributions for the benefit of those in their inner circle including using Investor contributions to pay for their personal expenses. Compl. at ¶¶ 14-15.

    b.  The Insiders actions, including back door agreements to cause Debtors to pay out on guarantees Debtors were not contractually obligated to, caused Debtors and Investors significant financial loss. *Id.* at ¶¶ 17-18.

    c.  Salzano, Grabato, and the other Insiders created the NRIA Partners Portfolio Fund I LLC to make it more difficult for Investors to track the progress of properties and profits. *Id.* at ¶ 19.

    d.  Salzano, Grabato, Scuttaro, and others acted to conceal their role in the fraud and the criminal history of Salzano and Scuttaro. *Id.* at ¶¶ 20-21.

    e.  Many of the employees and contractors of Debtors were family members or friends of Salzano, Grabato, and other Insiders, who were "overpaid" for purported services and, in some instances, services that may not have even been rendered. *Id.* at ¶¶ 31-32, 51.

    f.  The Insiders used Salzano's son's company, USC, as the primary mechanism of extracting Investor cash from Debtors through, for example, inflated construction contracts and unreasonable and undisclosed "developer fees." *Id.* at ¶ 39.

Despite Wipfli's efforts to warp the Complaint, it remains clear that Salzano, Grabato, and other Insiders long abandoned the interests of the Debtors and Investors and instead put their own personal benefits above all, aided in part by Defendants. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 451 (2d Cir. 2008) ("[e]vidence that [a company] *actually benefitted* from . . . management's fraud does not make the bankruptcy court's finding that . . . management did not *intend to benefit* the company clearly erroneous" in upholding application of adverse interest exception). Benefits derived from the wrongdoer's fraud that are used to keep the company alive are insufficient to preclude the adverse interest exception. *Id.* at 453 ("[T]he purported benefits that Appellees suggest the [company] *itself* received as a result of management's machinations are illusory. A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it.") (citations and quotations omitted). Courts have also recognized that

a merely incidental benefit received by a corporate debtor from a fraud-feasor's conduct will not bar the applicability of the adverse interest exception nor will it perfect an invocation of *in pari delicto*. *See, e.g.*, *In re California TD Investments, LLC*, 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013).

Because the Complaint alleges a personal benefit to the Insiders and not the Debtors, Wipfli's Motion should be denied on this basis.

> **d.      Even if the face of the Complaint contains facts that may support its application, Wipfli's assertion of *in pari delicto* is premature.**

Given that *in pari delicto* is an affirmative defense, New Jersey courts have recognized that it generally "cannot be used to support dismissal of a complaint under Rule 12(b)(6)" and is rarely appropriate even when the complaint pleads facts that might support the defense. *In re CTE 1 LLC*, No. 19-30256 (VFP), 2023 WL 5257940, at *36 (Bankr. D.N.J. Aug. 11, 2023) (denying motion to dismiss on grounds that applicability of *in pari delicto* and its exceptions would require factual development). Further, courts have often recognized that findings related to *in pari delicto*— particularly when considering one of the exceptions—are fact issues for a jury. *See Sevenson Env't Servs., Inc. v. McDonald*, No. CV 08-1386 (RMB/AMD), 2015 WL 13767999, at *1 (D.N.J. Sept. 14, 2015); *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 758 n.13 (3d Cir. 1990).

Accordingly, "given the fact-intensive nature of the doctrine," courts often deny a motion to dismiss asserting an *in pari delicto* defense under New Jersey law, particularly when discovery has yet to commence. *In re U.S. Mortgage Corp.*, 491 B.R. 642, 676 (Bankr. D.N.J. 2013); *see also In re Norvergence, Inc.*, 405 B.R. at 742, 749 (Bankr. D.N.J. 2009) (finding dismissal premature and noting that the *in pari delicto* doctrine is "not routinely considered on a motion to dismiss…the applicability of the defense and the application of the imputation…is not established

on the face of the Complaint").[3] The New Jersey Supreme Court has expressly found that, even where a complaint pleads facts that could impute the fraud of corporate officers on a corporation, that does not merit granting a motion to dismiss. *NCP Litig. Tr. v. KPMG LLP*, 901 A.2d 871, 888 (N.J. 2006) (holding that, even if the individuals' fraud had benefited the corporation, "the limited record before the Court precludes us from definitively making such a determination" and that, in any event, "any benefit would not be a complete bar to liability but only a factor in apportioning damages") (internal citations omitted). Because the Complaint alleges sufficient facts to show that adverse interest exception applies to Wipfli's *in pari delicto* claim and pursuant to New Jersey case law, it is premature to dismiss the Complaint at this stage.

## II.    Count II of the Complaint sufficiently pleads aiding and abetting securities fraud.

Wipfli incorrectly asserts that Count II of the Complaint alleging that Wipfli aided and abetted securities fraud on behalf of the Insiders should be dismissed because the Complaint does not allege the fraud with particularity pursuant to Rule 9(b) and because Wipfli is not an "agent" under the New Jersey Uniform Securities Act ("NJUSA"). Mem. at pp. 8–13, 16–17. To the contrary, the Complaint specifically and particularly pleads the specifics of the fraud and Wipfli's substantial assistance with the fraud, and Wipfli is an "agent" pursuant to the NJUSA.

### a.    The elements of aiding and abetting securities fraud are pled with particularity.

New Jersey securities laws were designed to prevent New Jersey from being used as a base of operations for bad actors marauding outside the state and creates a cause of action against one

---

[3]The NorVergence fraud involved Salzano and Scuttaro operating a Ponzi scheme as they did here too. In re Norvergence was not dismissed on the basis of in pari delicto. See In re Norvergence, 405 B.R. at 747–49; see also U.S. Dept. of Justice, Two Leaders of Real Estate Investment Firm Indicted in $650 million Ponzi Scheme Conspiracy, available at https://www.justice.gov/usao-nj/pr/two-leaders-real-estate-investment-firm-indicted-650-million-ponzi-scheme-conspiracy (Oct. 13, 2022) ("Salzano concealed his true managerial role at NRIA while using Grabato as a stand-in CEO in an effort to avoid scrutiny by investors of Salzano's prior guilty plea to defrauding small businesses in Louisiana through a large telecommunications company.").

who "[o]ffers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, . . . not misleading (the buyer not knowing of the untruth or omission)[.]" N.J.S.A. § 49:3-71(a)(2). *See generally Stevens v. Liberty Packing Corp.*, 111 N.J. Eq. 61, 65–66 (N.J. Ch. 1932) (emphasizing that securities laws exist to protect the uninitiated and to prevent frauds perpetrated on the public at large); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1197 (N.J. 2000) (noting that one purpose of New Jersey's security law is investor protection). A "primary actor" violates New Jersey securities laws when the primary bad actor knew of the untruth or omission, intended to deceive the buyer, and that the buyer suffered a loss. N.J.S.A. § 49:3-71(a); *see also Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Martin Oring and Searchlight Mins. Corp.*, 441 F. Supp. 3d 23, 41 (D.N.J. 2020) (denying defendants' motion to dismiss finding that the trustee adequately plead securities fraud). Section 49:3-71(d) establishes secondary liability for aiding and abetting the primary actor's securities law violations for "every person . . . *or agent who materially aids in the sale or conduct*." N.J.S.A. 49:3-71(d) (emphasis added).

After the statute is violated by a primary offender, a person may be liable for "aiding and abetting" if they assisted the primary offender in committing securities fraud and were agents who materially aided the scheme. N.J.S.A. 49:3-71(d). A plaintiff need not prove that the party accused of aiding and abetting the fraud perpetuated by the principal bad actor had scienter under N.J.S.A. 49:3-71(d). Rather, under New Jersey law, it is the *defendant's* burden to prove it "did not know, and in the exercise of reasonable care, could not have known" of the principal's bad acts. N.J.S.A. 49:3-71(d) (holding an agent liable "unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts . . . which give rise to liability").

The Complaint sufficiently and particularly pled that the primary actors, Salzano, Grabato, and their co-conspirators (the Insiders), engaged in securities fraud. *See* Compl. at ¶¶ 14-51. As explained above, one may commit securities fraud through the sale of "a security by engaging in any act . . . which would operate as a fraud or deceit upon any person," N.J.S.A. § 49:3-71(a)(4). The Complaint alleges that the primary actors were selling securities, *see, e.g.*, *id.* at ¶¶ 16, 29, 90, 98, 101, and in doing so, the Insiders, among other things, actively misrepresented information to Investors, *see, e.g.*, *id.* at ¶¶ 30, 36, 82, 84, 86; failed to disclose conflicts of interest and misused Investors funds to the personal benefit of the Insiders and their families and friends, *see, e.g.*, *id.* at ¶¶ 15, 31, 36. The Complaint also alleges that the Insiders operated the Debtors as a Ponzi scheme and engaged in misrepresentations to perpetuate that scheme. *See, e.g.*, *id.* at ¶¶ 17, 19, 38, 43, 49, 82. The Complaint therefore more than plausibly alleges underlying securities fraud, which the Trustee has also asserted directly against the Insiders and the Insider did not move to dismiss those claims. *See AIRN Liquidation Trust Co., LLC v. U.S. Construction, Inc., et al.*, Adv. No. 22-01257-JKS at Docket No. 33 (Amended Complaint); Docket No. 40 (U.S. Construction *et al.* Answer to Amended Complaint).

The Complaint also sufficiently alleges that Wipfli materially aided the Insiders in commission of the fraud. *See, e.g.*, *id.* at ¶¶ 60-72. Specifically, Wipfli maintained accounting files and prepared tax returns for Debtor entities and to do so, Wipfli received numerous documents for review including, but not limited to, the entity's general ledger, PPM, and operating agreement. *Id.* at ¶¶ 60-62. The Complaint describes a specific instance where Wipfli was asked to provide advice on a draft PPM for a debtor entity. *Id.* at ¶ 62. The Complaint also specifically describes Wipfli's involvement in preparing the 2031 Lombard 2020 tax returns which showed patterns of large incoming transfers from the NRIA parent bank account and subsequent transfers to other

Debtor entities in violation of the entity's PPM and operating agreement. *Id.* at ¶ 64. The Complaint further details Wipfli's involvement in moving expenses incurred by the individual Debtor entities to the NRIA parent accounting books to make the individual properties appear more profitable. *Id.* at ¶¶ 66-67. Wipfli also assisted the Insiders in "rolling" Investors into the Fund which resulted in phantom profits being buried in the Fund and damaged the Investors who did not choose to roll into the Fund, a fact that Wipfli knew through its role maintaining reports of investments into the Fund and redemptions. *Id.* at ¶ 68. These are a few examples of Wipfli's conduct which is outlined in the Complaint showing Wipfli's involvement in materially aiding the Insider's fraud.

Wipfli knew that the PPMs and other offering documents contained materially false and misleading information that concealed the truth about the ongoing Ponzi scheme but did nothing to prevent the distribution of PPMs or the ongoing solicitation of Investors. *Id.* at ¶¶ 97, 99. Further, Wipfli knew that the Insiders used the Debtors to perpetrate a Ponzi scheme and that the scheme was continuing. *Id.* at ¶ 97. Wipfli obtained the Debtors' and the Investors' reliance on it for accounting services, and Investors and the Debtors reasonably relied on Wipfli to ensure that financial statements, K-1s, and tax returns were not misleading. *Id.* Also, as noted above, Wipfli knew about failures to disclose, for example, the commingling of Investor funds with general NRIA funds and the Insiders' non-compliance with GAAP and other applicable accounting principles. *Id.* at ¶¶ 62-64, 69, 75, 83, 106.

Because the Complaint plausibly pleads each element of securities fraud and Wipfli's material aid to the fraud, the Motion should be denied.

> **b.    The Complaint sufficiently alleges that Wipfli is an "agent" under N.J.S.A. § 49:3-49(b).**

Wipfli argues that the Liquidation Trustee's claim for aiding and abetting securities fraud must be dismissed because Wipfli is not an agent under the NJUSA. Mem. at 9-13. Its primary

argument is that Wipfli is not an "agent" because Wipfli did not represent a broker-dealer or issuer in effecting or attempting to effectuate the purchases or sales of securities. *Id.* at 10. But Wipfli's argument fails to appreciate the breadth of the NJUSA, which applies the definition of "agent" to any individual representing an issuer (or even attempted issuer) of securities in effecting or even attempting to effect purchases or sales of securities.

New Jersey statutory law establishes a broad scope of parties that may be liable for violating the Uniform Securities Law. An agent may be held liable under N.J.S.A. § 49:3-71(d) when an agent materially aids in the sale of securities. An "agent" is, in part, defined as "any individual other than a broker dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." N.J.S.A. 49:3-49(b). And an "issuer," in turn, includes "any person who issues or proposes to issue any security" with limited exceptions. N.J.S.A. 49:3-49(h).

Wipfli appears to primarily dispute that it was representing the Debtor entities "in effecting or attempting to effect purchase or sales of securities." Mem. at 9. In so arguing, Wipfli impermissibly narrows the inquiry to its position that "Wipfli did not effect or attempt to effect purchases or sales of securities." Mem. at 10 (internal quotations and alterations omitted). But an agent need not directly effect or attempt to effect purchases or sales of securities, it is enough that the individual represented another, here the Debtor entities, in effecting or attempting to effect purchase or sales of securities. And that is exactly what Wipfli did when it assisted U.S. Construction and the Debtors in "rolling" Investors into the Fund, which was effectuated by selling the rolling Investors securities. *Id.* at ¶ 68. In addition, Wipfli provided services to the property level funds that Wipfli knew were violating the safekeeping and segregation of investment funds

required by the PPMs, which enabled and emboldened the Insiders to sell more securities in additional property level funds. *Id.* at ¶¶ 60-70.

Each of the cases cited by Wipfli in support of its argument that it is not an "agent" are distinguishable or inapplicable. First, Wipfli relies on *Zendell v. Newport Oil Corp.*, 544 A.2d 878 (N.J. Super. Ct. App. Div. 1988), which does not analyze the definition of "agent" under the NJUSA. *See generally Zendell*, 544 A.2d 878. The majority of the opinion interprets the federal Securities Act of 1933, 15 U.S.C. § 77*l*, which does not include the secondary liability language included in the NJUSA and does not even include the term "agent." *Id.* The Court mentions the NJUSA in passing without analysis of the actual language of the NJUSA. *Id.* at 882. Additionally, *Zendell* analyzed whether the defendant law firm was liable as a "seller or control agent" on a motion for summary judgment, not a motion to dismiss. *Id.* at 883. Similarly, *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, No. 2005 WL 3500032 (D.N.J. Dec. 20, 2005) is a ruling on an unopposed motion for summary judgment and does not interpret or apply the definition of "agent" under the NJUSA. *McKowan*, No. 94–5522(RBK), 96–2318(RBK), 2005 WL 3500032, at *5–6. And the *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720 (Minn. 1983) opinion, affirming a Minnesota state court's order of judgment applying Minnesota law, involved a defendant accountant firm performing an *independent* audit, not the services that Wipfli provided here, and the Court noted this independence in finding that the defendant did not act as an agent of the securities seller. *See generally Jenson*, 335 N.W.2d 720.

Wipfli's discussion of *Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012) is also misguided. On a basic level, *Bennett*, which is a decision from the Sixth Circuit, does not cite a single New Jersey or Third Circuit case. *See generally Bennett*, 683 F.3d 734. Also, *Bennett* analyzes the liability of a single lawyer, not an accounting firm, and only mentions accountants in passing

citations to a secondary source and a case interpreting federal securities law. *Id.* Beyond these differences, this case is different from *Bennett* because, unlike the defendant in *Bennett*, Wipfli was not providing "traditional" accounting services for a basic sale of securities.

At bottom, Wipfli was involved in a multi-year, multi-party, multi-million-dollar Ponzi scheme where one of the Insiders, Salzano, plead guilty to securities fraud. *See generally* Compl. Wipfli accepted direction from and gave accounting advice to Salzano, and other NRIA employees, on issues related to the NRIA parent company and Debtor entities despite having no engagement letter with the NRIA parent company and only sporadic engagement letters with some individual Debtor entities. *Id.* at ¶¶ 56-59. Moreover, Wipfli executed engagement letters with USC, a co-conspirator in the fraud, and contemporaneously aided USC, and Salzano's son, in its handling financial transactions for allegedly separate entities, NRIA and the individual Debtor entities. *Id.* at ¶ 56. Wipfli provided refunds from the individual Debtor accounts to the NRIA parent company in knowing violation of the Debtor entities' governing documents, which were in Wipfli's possession. *Id.* at ¶¶ 75-76. Wipfli also assisted the Insiders in creating "phantom profits" in the Fund by "rolling" Investors into the Fund. *Id.* at ¶ 68. Therefore, Wipfli went beyond providing "traditional" accounting services, and, instead, was deeply involved in assisting multiple parties and entities in effecting the sale of securities such that it qualifies as an "agent" under New Jersey law based on the allegations in the Complaint.

### III.    Count III of the Complaint sufficiently pleads accounting malpractice on behalf of the Debtors.

Wipfli argues that the Liquidation Trustee's accounting malpractice claim on behalf of the Debtors[4] fails to state a claim because the Complaint does not state with "sufficient clarity"

---

[4] Wipfli claims to be confused about how the Trustee defines "NRIA" in the Complaint, Mem. at 14, but the Complaint, and this Opposition, define NRIA and its related entities as the "Debtors" and the Complaint's description of the NRIA LLC entities does not "muddle" the allegations as Wipfli alleges. See, e.g., Compl. at ¶ 1. To the extent

Wipfli's duty of care to the Debtors nor what damages the Debtors suffered. Mem. at pp. 13–15.

Wipfli essentially complains that the Complaint fails to plead accounting malpractice, specifically

duty and damages, with particularity under Rule 9(b). But Rule 9(b) does not apply to this claim,

which is a species of accounting claim not fraud. *See* § 2A:53A-25 (characterizing as "negligence"

claim); *Resolution Tr. Corp. v. del Re Castellett*, No. 92–4635(AMW), 1993 WL 719764, at *2

(D.N.J.1993) (noting that "Rule 9(b) does not reach claims grounded in negligence"). Instead, Rule

8 applies, and the Liquidation Trustee has far exceeded the requirement to plead "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). To

survive a motion to dismiss, the Trustee need only plead facts to plausibly show that: (1) Wipfli

owed a duty of care to the Debtors; (2) that Wipfli breached that duty; and (3) the breach injured

the Debtors. *Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*, 2024 WL

3032578, at *6 (D.N.J. 2024).

The Liquidation Trustee has plausibly pled that Wipfli owed the Debtors a duty of care.

The Complaint alleges that Wipfli executed engagement letters under which it provided a variety

of services to the Debtors, including engagement letters with individual Debtor entities. Compl. at

¶¶ 56-59, 73, 105. The Debtors paid Wipfli for accounting work. *Id.* at ¶¶ 73-76. These allegations

are all that is required of the Liquidation Trustee at this stage of the litigation. *Country Club Drive*,

2024 WL 3032578, at *4–6 (denying defendant consultant's motion to dismiss plaintiff's claim

---

there is confusion, it is because Wipfli operated on such a deep level with the Insiders that it allowed the principals of
USC to pose questions regarding bookkeeping for the NRIA parent company, without being directly engaged or
retained by NRIA. See, e.g., Compl. ¶ 66. Regardless, the use of this nomenclature of the numerous Debtor entities is
not sufficient reason to dismiss the accounting malpractice claim. *Cf. Patrick v. Equifax Info. Servs., LLC*, No. CV
23-4092 (CPO/EAP), 2024 WL 2077036, at *4 (D.N.J. May 9, 2024) (rejecting argument that collective term
"Defendants" rendered complaint a "shotgun" pleading where narrative contained detailed factual allegations,
incorporated the factual narrative by reference, and provided defendants adequate notice of challenged conduct); *In
re NJ Affordable Homes*, 2013 WL 6048836, at *52–54.

for professional negligence noting that the legal question of "duty of care depends on underlying factual concerns that may not be resolved at this early stage").

Wipfli also claims that the Complaint does not specify the Debtors' damages. Mem. at pp. 14–15. Yet the Complaint is rife with facts that support the Liquidation Trustee's contention that the Debtors were damaged by Wipfli's conduct. For example, the Complaint alleges that Wipfli's conduct assisting the Insiders with the fraud through accounting, advising, and other services led to, among other things, financial losses for the Debtors, *id.* at ¶¶ 18, 26, including excessive advertising costs, *id.* at ¶¶ 27-28, 71, payment of significant amounts to family and friends of the Insiders for little if any benefit to Debtors, *id.* at ¶¶ 31-33, and payment of inflated fees to USC, *id.* at ¶ 39; as well as the violations of the Debtor entities' governing documents, *id.* at ¶¶ 63-64. The Trustee plausibly pled that the Debtors suffered significant damages as a result of Wipfli's conduct, *see, e.g.*, *id.* at ¶ 108, and that is all that is required of the Trustee's Complaint. *Country Club Drive*, 2024 WL 3032578, at *4–6.

In sum, Wipfli's Motion applies the wrong pleading standard and discounts the allegations in the Complaint at a stage when those allegations must be taken as true. Properly evaluated under Rule 8, the Complaint plausibly alleges accounting malpractice on behalf of the Debtors against Wipfli. On this point, the Motion should be denied.[5]

### IV. <u>Count III of the Complaint sufficiently pleads accounting malpractice on behalf of the Investors.</u>

Wipfli asserts that the Liquidation Trustee's accounting malpractice claim on behalf of Investors fails to state a claim under NJUSA § 2A:53A-25. Mem. at pp. 15–16. Wipfli again attempts to hold the Trustee to a higher pleading standard, but Rule 9(b) does not apply to the

---

[5] Wipfli does not dispute, nor could it, that the Complaint adequately alleges that Wipfli breached its duty to the Debtors. See Mem. at pp. 13–15.

accounting malpractice claim. *See In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 272–74 (C.A.3 (N.J.), 2006) (finding that 9(b) is inapplicable to negligence claims). Instead, the Trustee is only required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(1), which it does.

Pursuant to NJUSA § 2A:53A-25(b)(2), an accountant can be held liable to a third party when (1) the accountant knew that the services rendered to the client would be made available to the third party and the third party and the specified transaction were specifically identified to the accountant; (2) the accountant knew the third party intended to rely upon the accountant's service in connection with the specified transaction, and (3) the accountant directly expressed, by word or conduct, the accountant's understanding of the third party's intended reliance.

Here, the Complaint alleges that Wipfli knew, among other things, that Investors would rely upon Wipfli's accounting services, Compl. at ¶ 107, including because Wipfli prepared Investor K-1s that were necessarily provided to investors, *id.* at ¶ 55. In order to provide tax services, Wipfli received PPMs along with Investor rollover and redemption data, Investor subscription and rollover agreements, and Investor W-9s. I*d.* at ¶ 60. Wipfli tracked Investor rollovers and redemptions in the Fund, *id.* at ¶ 68, which one was key strategy to expanding fraud, including by touting alleged tax breaks from the rollovers; and Wipfli knew the Insiders' misrepresentations were made to and relied on by Investors and that Investors would, and did, rely on the misrepresentations when making investments, *id.* at ¶¶ 84-86. Finally, by providing tax documents for the Investors, Wipfli demonstrated an understanding of the Investors' reliance on Wipfli's services. *Id.* ¶ 55. Therefore, properly evaluated under Rule 8, the Complaint plausibly alleges accounting malpractice on behalf of the Investors, and Wipfli's Motion on this point should be denied.

V.    **The Complaint sufficiently alleges facts necessary for the heightened pleading standard for fraud claims.**

Wipfli generally asserts that the Complaint's fraud claims—aiding and abetting common law fraud and aiding and abetting securities fraud—fail to satisfy Rule 9(b)'s heightened pleading standard. The narrative format adopted by the Complaint, however, is a clear, articulate, and common method of pleading and is especially appropriate here given the complexities of the Ponzi scheme and Wipfli's role in the fraud. "Bankruptcy courts have afforded greater pleading liberality in adversary complaints brought by trustees, because a trustee comes to the action as a 'third party outsider to the fraudulent transaction, that must plead fraud on second-hand knowledge for the benefit of the estate and all of its creditors.'" *In re NJ Affordable Homes*, 2013 WL 6048836, at *11 (citing *In re Reach McClinton & Co., Inc.*, 62 B.R. 978, 982–83 (Bankr. D.N.J. 1986)).

The Complaint's occasional collective references to the Debtors or to Salzano, Insiders, or his co-conspirators, given all of the detailed allegations in the Complaint, do not warrant dismissal. Where, as here, a trustee alleges that multiple entities operated as a single unified enterprise, referral to the entities in that enterprise as a single entity is appropriate. *See, e.g.*, *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP), 2023 WL 2961856, at *24 (Bankr. D.N.J. Apr. 14, 2023). Ultimately, at the pleading stage, a complaint must proffer allegations sufficient to put defendants on notice of the specific misconduct alleged and with which they are charged, which may be shown by injecting "precision or some measure of substantiation" into the allegations. *See, e.g.*, *Inventory Recovery Corp. v. Gabriel*, No. 2:11-cv-01604, 2012 WL 2990693 (D.N.J. Jul. 20, 2012). The Complaint here includes factual allegations supporting each element of each fraud claim and is specific and particular enough to notify Wipfli of the misconduct believed to be attributable to its acts or omissions. The Liquidation Trustee has already addressed the allegations regarding its aiding and abetting securities fraud claim against Wipfli, and that pleading meets the

Rule 9(b) standard. The Liquidation Trustee's aiding and abetting common law fraud claim should also survive dismissal.

A claim for aiding and abetting fraud survives dismissal if a complaint's allegations, which must be taken as true, plausibly show: (1) an underlying wrongdoing by the principal actor; (2) that the defendants knew of their role in the illegal or tortious activity at the time they provided assistance; and (3) that the defendants knowingly and substantially assisted the principal violation. *State, Dept. of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l., Inc.*, 904 A.2d 775, 784 (N.J. Super. Ct. App. Div. 2006) (finding that the complaint sufficiently stated a claim for aiding and abetting fraud).

For example, in *In re Reach McClinton & Co., Inc.*, the Court found that the complaint's allegations were "sufficient to allow the defendant frame a responsive pleading" and denied the defendants' motion to dismiss the complaint for failure to state a claim. 62 B.R. at 982–83. The plaintiff bankruptcy trustee brought several claims against the defendants all sounding in fraud. The trustee's eight-count complaint alleged in the first count that specific transactions by the defendants violated the debtor's preemptive rights to additional stock; in the other counts, the trustee alleged various consequences of the actions in the first count including that the failure to recognize such preemptive rights was a breach of fiduciary duty, the result of mismanagement, a conspiracy and/or the misrepresentation of material facts; that at the very least there was a diversion of corporate funds; and that defendants participated in self-dealing. *Id.* at 982. The Court found that these allegations did "disadvantage" the defendants because they could "tell generally what the claim is" and "formulate a responsive pleading." *Id.; see also In re Norvergence,* 424 B.R. at 691–92 (finding that the plaintiffs adequately plead fraud by identifying specific acts by the defendants that violated the New Jersey Consumer Fraud Act to provide "plausible basis" for

the defendants' liability); *Forman v. Cornerstone Realty Agency, LLC,* No. 06–02123 (DHS), 2006 WL 2990467, at \*3 (Bankr. D.N.J. 2006) (finding the trustee met the 9(b) pleading standard by providing more than one hundred paragraphs detailing the global Ponzi scheme, approximately twenty-nine of which were specific to defendants and which follow certain facts applicable to defendants).

Here, Wipfli is at no disadvantage, and the Complaint's allegations are sufficiently particular to allow Wipfli to frame a responsive pleading. The Complaint outlines in detail how Salzano, Grabato, and their conspirators operated the Debtors as a massive Ponzi scheme. *See, e.g.*, Compl. at ¶¶ 14-51. In fact, on February 27, 2024, Salzano pled guilty to securities fraud, conspiracy to commit wire fraud, and conspiracy to defraud the United States in *United States of America v. Thomas Nicholas Salzano*, No. 2:22-cr-00690–EP-1 (D.N.J.). In his plea agreement and allocution, Salzano admitted to operating the Debtors as a Ponzi scheme by admitting under oath to each element of a Ponzi scheme. *See Plea Agreement*, [D.N.J. Case No. 22-cr-00690, Docket No. 86]; Plea H'rg Tr. at 39:9-21. Wipfli's argument that the allegations of fraud are somehow vague or conclusory is without merit.

The Complaint also sets forth in detail the nature and scope, known-to-date, of Wipfli's role in relation to the underlying fraud, its knowledge of what was happening, and that it knowingly and substantially assisted in the fraud. Examples of allegations supporting these elements include that Wipfli knew of the misrepresentations in the PPMs and governing documents of the individual Debtor entities from its possession and review of numerous documents provided by the Insiders, Compl. at ¶¶ 60-62; that Wipfli was asked to provide advice on at least one draft PPM, *id.* at ¶ 62; that Wipfli was involved in preparing the 2031 Lombard 2020 tax returns which showed patterns of transfers in violation of the entity's PPM and operating agreement, *id.* at ¶ 64; that Wipfli was

involved in moving expenses incurred by the individual Debtor entities to the NRIA parent accounting books to make the individual properties appear more profitable despite its knowledge Investors were promised that these funds would not be commingled, *id.* at ¶¶ 66-67; that Wipfli assisted the Insiders in "rolling" Investors into the Fund which resulted in phantom profits being buried in the Fund and damages to Investors who did not choose to roll into the Fund, a fact that Wipfli knew through its role maintaining reports of investments into the Fund and redemptions, *id.* at ¶ 68; that Wipfli knew that the PPMs and other offering documents contained materially false and misleading information, *id.* at ¶¶ 97, 99; that Wipfli knew that the Insiders used the Debtors to perpetrate a continuing Ponzi scheme, *id.* at ¶ 97; that Wipfli knew about failures to disclose, the commingling of Investor funds with general NRIA funds and the Insiders' non-compliance with GAAP and other applicable accounting principles, *id.* at ¶¶ 62-64, 69, 75, 83, 106; and that Wipfli knew the Insiders were offering too good to be true guaranteed returns to Investors and provided tax advice regarding these returns despite, by virtue of their management of the Debtor's accounting files, knowing that NRIA could not deliver on this promise, *id.* at ¶ 71. These allegations are specific, detailed, and more than enough to plausibly show that Wipfli knew of its role in the Ponzi scheme and knowingly and substantially assisted the Insiders in perpetrating the Ponzi scheme.

Collectively, the factual allegations related to the fraud clams in the Complaint are not vague and satisfy Rule 9(b)'s heightened pleading standard. The allegations provide Wipfli with more than sufficient notice of the nature and scope of the claims and alleged misconduct asserted against it, including the scope of the fraud Wipfli substantially assisted the Insiders in perpetrating.

**VI.**     <u>**Count IV of the Complaint sufficiently pleads unjust enrichment.**</u>

Wipfli asserts that the Liquidation Trustee's unjust enrichment claim against Wipfli must be dismissed because, according to Wipfli, the unjust enrichment claim applies only to the fraud

claims against Wipfli and, because Wipfli argues the fraud claims must be dismissed, the unjust enrichment claim should also be dismissed. Mem. at pp. 17–19. Contrary to Wipfli's assertions, the unjust enrichment claim against Wipfli includes not only the fraud claims but also the accounting malpractice claim. The Complaint specifically states that Wipfli was "enriched and received economic benefits without justification as a result of [its] conduct… and it would be inequitable for Wipfli to retain the benefit conferred on them…. Further, by receiving payment for services that aided and abetted the Insiders' fraud, [Wipfli has] been unjustly enriched[.]" Compl. at ¶¶ 111-113. The Complaint does not limit the unjust enrichment claim to the fraud claims but references Wipfli's "conduct" in general. Therefore, the Complaint alleges that Wipfli was unjustly enriched by all of its bad acts, including accounting malpractice.

Regardless, because, as outlined *supra*, the Complaint adequately pleads the fraud claims (and the accounting malpractice claim), the Motion should be denied as to unjust enrichment.

## VII.    Conclusion

WHEREFORE, for the reasons stated above in this Opposition, the Liquidation Trustee submits that the Court should deny the Motion in its entirety, and respectfully requests that the Court grant the Liquidation Trustee such other relief that the Court deems just and proper.

Dated: September 13, 2024          **ICE MILLER LLP**
New York, New York

*s/ Louis T. DeLucia*
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
1500 Broadway, Suite 2900
New York, NY 10036
Phone: (212) 835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com

George A. Gasper (admitted *pro hac vice*)
Jessa DeGroote
Libby Moyer (admitted *pro hac vice*)

One American Square, Suite 2900
Indianapolis, IN 46282
Phone: (614) 462-2700
george.gasper@icemiller.com
jessa.degroote@icemiller.com
libby.moyer@icemiller.com

*Counsel to the AIRN Liquidation Trust Co., LLC in its capacity as Liquidation Trustee of the AIRN Liquidation Trust*