| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Michael S. Etkin, Esq.<br>Nicole Fulfree, Esq.<br>LOWENSTEIN SANDLER LLP<br>One Lowenstein Drive<br>Roseland, NJ 07068<br>Telephone (973) 597-2500<br>E-mail:  metkin@lowenstein.com<br>            nfulfree@lowenstein.com<br><br>Jennifer Fiorica Delgado, Esq.<br>LOWENSTEIN SANDLER LLP<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone (212) 262-6700<br>Email:   jdelgado@lowenstein.com<br><br>**GODFREY & KAHN, S.C.**<br>Daniel T. Flaherty (*pro hac vice application forthcoming*)<br>Daniel J. Blinka (*pro hac vice application forthcoming*)<br>Nicholas J. Bezier (*pro hac vice application forthcoming*)<br>833 E. Michigan St., Ste. 1800<br>Milwaukee, WI 53202<br>Telephone (414) 273-3500<br>Email:   Dflaherty@gklaw.com<br>            Dblinka@gklaw.com<br>            Nbezier@gklaw.com<br><br>*Counsel to Defendant, Wipfli LLP* | **DEFENDANT WIPFLI LLP'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT** |
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS LLC, *et al.,*<br><br>                            Debtors. | Chapter 11<br><br>Case No. 24-14539 (JKS) |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br>                            Plaintiff,<br>V.<br><br>WIPFLI LLP and DOES 1-100,<br>                            Defendants. | Adv. Proc. No. 24-01456 (JKS) |

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT ........................................................................................................................................ 2

I.     THE DOCTRINE OF *IN PARI DELICTO* BARS ALL CLAIMS. ...................................... 2

    a.    The involvement of the Trust poisons all of the claims it brings,
whether the claims are brought on behalf of the Debtors or the Investors. ........................ 2

    b.    The Complaint does not adequately plead that a change in corporate
management occurred to break the chain of imputation of wrongdoing,
and even if it did, the Trust's allegations fail the actual standard that
Debtors had rid themselves of the corrupt infuence of the Insiders. ................................. 3

    c.    The adverse interest exception to *in pari delicto* does not apply because the
Trust alleges that the Debtors benefitted from the Insiders' misconduct. ......................... 5

    d.    It is not premature for this Court to apply *in pari delicto*. .................................................... 6

II.    THE *NJUSA* CLAIM FAILS BECAUSE WIPFLI IS NOT AN AGENT. ........................... 7

III.   THE COURT SHOULD DISMISS THE ACCOUNTING MALPRACTICE
CLAIM. ................................................................................................................................. 9

    a.    The Trustee does not plead sufficient facts to establish that Wipfli owed a
duty of care to each Debtor, nor that Wipfli's ostensible failure to follow
GAAP standards caused harm to the Debtors. .................................................................. 9

    b.    The Trustee cannot pursue a claim for the Investors against Wipfli under
the Accountant Liability Act. ............................................................................................ 11

IV.   THE AIDING AND ABETTING CLAIM FAILS TO MEET THE RULE 9(B)
STANDARD. ........................................................................................................................ 12

V.    THE UNJUST ENRICHMENT CLAIM FAILS IF THE OTHER CLAIMS FAIL. .......... 13

CONCLUSION ................................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994) .................................................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 10

*Bennett v. Durham*,
  683 F.3d 734 (6th Cir. 2012) ............................................................................................ 8, 9

*Bestherb, Inc. v. Yinlink Int'l Inc.*,
  No. 22-06548, 2024 WL 3898039 (D.N.J. Aug. 22, 2024) ............................................... 13

*Bondi v. Citigroup, Inc.*,
  32 A.3d 1158 (N.J. Super. Ct. App. Div. 2011) ............................................................... 5, 6

*Cast Art Indus., LLC v. KPMG LLP*,
  3 A.3d 562 (N.J. Super. Ct. App. Div. 2010) .................................................................... 11

*Cast Art Indus., LLC*,
  36 A.3d .............................................................................................................................. 12

*Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*,
  No. 19-cv-20525, 2024 WL 3032578 (D.N.J. June 17, 2024) .......................................... 10

*In re Dep't 13, Inc.*,
  No. 23-10691, 2024 WL 958080 (Bankr. D. Del. Mar. 5, 2024) ........................................ 2

*In re Dublin Sec., Inc.*,
  133 F.3d 377 (6th Cir. 1997) .............................................................................................. 7

*In re Le-Nature's Inc.*,
  No. 09-mc-00162, 2009 WL 3571331 (W.D. Pa. Sept. 16, 2009) ................................... 4, 5

*In re Reach McClinton & Co.*,
  62 B.R. 978 (Bankr. D.N.J. 1986) ..................................................................................... 13

*In re SRC Liquidation LLC*,
  581 B.R. 78 (Bankr. D. Del. 2017) .................................................................................... 12

*Jenson v. Touche Ross & Co.*,
  335 N.W.2d 720 (Minn. 1983) ............................................................................................ 8

*Kelley v. BMO Harris Bank, N.A.*,
  Nos. 23-2551, 23-2632, 2024 WL 4158179 (8th Cir. Sep. 12, 2024) ................................. 2

*Levins v. Healthcare Revenue Recovery Grp. LLC*,
    902 F.3d 274 (3d Cir. 2018) .................................................................................... 4

*Miller v. Brozen*,
    No. 23-2540, 2024 WL 4024363 (D.N.J. Aug. 30, 2024) ........................................ 4

*NCP Litig. Trust v. KPMG*,
    945 A.2d 132 (N.J. Super. Ct. Law Div. 2007) ....................................................... 5

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006) ................................................................................ 2, 7

*Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
    437 F.3d 1145 (11th Cir. 2006) ............................................................................... 7

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
    267 F.3d 340 (3d Cir. 2001) ................................................................................ 6, 7

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    721 F.3d 54 (2d Cir. 2013) ...................................................................................... 2

*Snyder v. Am. Ass'n of Blood Banks*,
    676 A.2d 1036 (N.J. 1996) .................................................................................... 10

*State Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*,
    904 A.2d 775 (N.J. Super. Ct. App. Div. 2006) .................................................. 2, 3

*Stella v. Dean Witter Reynolds, Inc.*,
    574 A.2d 468 (N.J. Super. Ct. App. Div. 1990) .................................................. 2, 3

*Thabault v. Chait*,
    541 F.3d 512 (3d Cir. 2008) .................................................................................... 6

*Travelers Indem. Co. v. Cephalon, Inc.*,
    620 F. App'x 82 (3d Cir. 2015) ............................................................................. 13

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (Bankr. D. Del. 2012) ....................................................................... 5

**Statutes**

Ky. Rev. Stat. § 292.310(1) ................................................................................................ 8

N.J.S.A. § 2A:53A-25(b) ................................................................................................. 12

N.J.S.A. § 2A:53A-25(b)(2) ............................................................................................. 12

N.J.S.A. § 49:3-75 .............................................................................................................. 8

Case 24-01456-JKS    Doc 10    Filed 10/01/24    Entered 10/01/24 16:43:15    Desc Main
Document      Page 5 of 20

N.J.S.A. § 49:3-49(b) ............................................................................................................... 8

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................................... 10

Fed. R. Civ. P. 9(b) ............................................................................................. 1, 10, 12, 13

**PRELIMINARY STATEMENT**

The Trustee still has not asserted a sufficient basis to shift liability for the wrongdoing of individuals that purportedly operated a Ponzi scheme (the "Insiders") to the accounting firm that provided services to some—but not all—of the entities that the Insiders allegedly used to perpetrate their fraud. The Trustee attempts to show that Wipfli played a leading role in the Ponzi scheme, but the Complaint only contends that Wipfli "maintained the accounting files and prepared tax returns and Investor K-1's for the NRIA LLC entities" (Compl. (Adv. Dkt. 1) ¶ 55)—general services provided by accounting firms on a daily basis, and, in this instance, services provided to only investor LLCs, not the parent entity, NRIA, that allegedly orchestrated the Ponzi scheme. The Complaint does not allege, nor could it, that NRIA ever directly engaged Wipfli.

The Trustee's effort to find a scapegoat in Wipfli fails. The Trustee cannot ignore that it stands in the shoes of the wrongdoing entities, and that the doctrine of *in pari delicto* bars it from recovering claims for its own wrongdoing.

Wipfli did not effect or attempt to effect sales of securities and was thus not an "agent" under the New Jersey Uniform Securities Act. Instead of clarifying whether its accounting malpractice claim is on behalf of the Debtors or the Investors, the Trustee states its claim is actually two claims—a claim on behalf of the Debtors and a claim on behalf of the Investors—but it makes no difference as both are required to be dismissed. Finally, the Trustee refuses to identify the parties to the underlying fraud in this matter and how each individual participated in that fraud, which runs afoul of Rule 9(b) of the Federal Rules of Civil Procedure.

The Court should dismiss each of the Trustee's claims.

# ARGUMENT

## I. THE DOCTRINE OF *IN PARI DELICTO* BARS ALL CLAIMS.

### a. The involvement of the Trust poisons all of the claims it brings, whether the claims are brought on behalf of the Debtors or the Investors.

The Trustee asserts that the Investors' clean hands prevent the Court from applying *in pari delicto* to the Investors' claims. (Opp. Br. (Adv. Dkt. 9) at 14–15.) The Trustee does not dispute—nor could it—that the Liquidation Trust stands in the shoes of NRIA for purposes of *in pari delicto* doctrine. *See e.g.*, *In re Dep't 13, Inc.*, No. 23-10691, 2024 WL 958080, at *4 (Bankr. D. Del. Mar. 5, 2024); *Nisselson v. Lernout*, 469 F.3d 143, 149 (1st Cir. 2006).

It is not material *whose* claims the Trust brings—whether it be the Debtors or the Investors—because it is *the Trust* that is bringing those claims. The Trust is not "cleansed" of NRIA's wrongdoing because it is asserting the Investors' claims. *See Kelley v. BMO Harris Bank, N.A.*, Nos. 23-2551, 23-2632, 2024 WL 4158179, at *3 (8th Cir. Sep. 12, 2024) (applying *in pari delicto* to reverse jury verdict after many years of litigation and holding that the fact an entity was placed into receivership for benefit of creditors "does not establish that the *entity* is 'cleansed' of any prior wrongdoing"; "in bankruptcy, the trustee is 'subject to any equitable or legal defenses that could have been raised against the debtor'").[1] *In pari delicto* applies whether the Trust is asserting claims on behalf of the Debtors or on behalf of the Investors. The Trustee offers *Stella v. Dean Witter Reynolds, Inc.*, 574 A.2d 468, 477–78 (N.J. Super. Ct. App. Div. 1990) and *State Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775

---

[1] The Eighth Circuit based its decision, in part, on *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013). The Eight Circuit noted *Picard* held the doctrine of *in pari delicto* barred a trustee under the Securities Investor Protection Act from bringing claims on behalf of the Madoff estate, but it reasoned that Picard was vested with the same powers as a bankruptcy trustee. *Kelley*, 2024 WL 4158179, at *4. Ultimately, *Picard* ruled that the "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative." *Id.* (citing *Picard*, 721 F.3d at 63.)

2

(N.J. Super. Ct. App. Div. 2006) for the proposition that *in pari delicto* cannot apply to victims of a fraud. Each of those cases is inapposite because the claim was brought by the victim of the fraud, not the wrongdoer or its successor entity, as is the case here. *See Stella*, 574 A.2d at 478 ("there is no evidence to support the conclusion that [claimant] conspired with [wrongdoer] to defraud third parties or was equally culpable with [wrongdoer] for some other reason…"); *McCormac*, 904 A.2d at 778 (claim brought by regulator). The Trust, which stands in NRIA's shoes, is not the victim.

> **b.    The Complaint does not adequately plead that a change in corporate management occurred to break the chain of imputation of wrongdoing, and even if it did, the Trust's allegations fail the actual standard that Debtors had rid themselves of the corrupt influence of the Insiders.**

The Trustee next asserts that a change in corporate management from the Insiders to the Casey Group breaks the chain of imputation of NRIA's management's wrongdoing and forecloses application of *in pari delicto*. (Opp. Br. at 15–19.) But the Complaint does not actually allege that *any* change in corporate management occurred. The Trustee cites paragraphs 15, 20, and 23 of the Complaint to allege a change in corporate management; these paragraphs describe only, in broad strokes, the nature of the alleged Ponzi scheme, how the Insiders managed and controlled it, and Rey Grabato's resignation as an officer and flight from the country. (*See* Compl. ¶¶ 15, 20, 23.) The paragraphs allege *nothing* about the Casey Group or the timing of its appointment. (*See id.*)

Realizing this, the Trustee abuses the incorporation-by-reference doctrine to bootstrap its deficient pleading with documents from other actions against the Insiders that it does not attach to either the Complaint or its opposition to Wipfli's motion to dismiss. (*See* Opp. Br. at 16.) The contours of the incorporation-by-reference doctrine are long-set in the Third Circuit:

> A district court ruling on a motion to dismiss, generally, may not consider matters extraneous to the pleadings. However, the court may consider document[s] integral to or explicitly relied upon in the complaint, and any undisputedly authentic

3

> document that a defendant attaches ... if the plaintiff's claims are based on the document. **What is critical to this exception is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited in the complaint**.

*Miller v. Brozen*, No. 23-2540, 2024 WL 4024363, at *5 (D.N.J. Aug. 30, 2024) (emphasis added) (internal citations omitted). The Trustee fails to show that the claims in its complaint are based on these documents. To the contrary, the Trustee's claims exist independent of criminal proceedings or civil proceedings brought by regulators. In other words, the documents the Trustee cites did not create the rights to action that the Trustee now pursues by this proceeding. For that reason, the claims in this proceeding are not "based" on those documents. *See e.g.*, *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 280 (3d Cir. 2018) (finding a document "off limits" on a Rule 12(b)(6) motion because "the claims in the [] complaint are not based on it").

*In pari delicto* would still apply even if the Court could consider those documents because the Trustee incorrectly sets the standard of how the chain of imputation can be broken. It is not sufficient that a change in corporate management occur—rather, the wrongdoing entity must "rid itself of [the] corrupt influence" of the wrongdoing officers. *In re Le-Nature's Inc.*, No. 09-mc-00162, 2009 WL 3571331, at *6 (W.D. Pa. Sept. 16, 2009). The *Le-Nature's* Court did not apply *in pari delicto* where a court had appointed a custodian to run a business and by that appointment "ordered a **complete usurpation of corporate authority** rendering [the wrongdoing officers] **impotent** to run Le-Nature's." *Id.* (emphasis added).

The Trustee does not plead a similar exclusion of the Insiders, and if anything, pleads the *opposite*. The Trust alleges that NRIA brought in Investor funds through "at least" January 2022—two months after the Casey Group was apparently appointed. (Compl. ¶ 24.) Moreover, the Trustee pleads that Rey Grabato II "stepped down from his nominal role as Manager, President,

4

and Chief Executive Officer of NRIA" only "[s]hortly before the bankruptcy filing," (*Id.* ¶¶ 23, 79), and that Nick Salzano "**controlled** NRIA using Grabato…." (*Id.* ¶ 20.) Even accounting for the appointment of the Casey Group (which it cannot as a matter alleged via a document outside the pleadings), the Complaint shows that the Insiders' control continued past the appointment of the Casey Group and does not otherwise demonstrate the appointment of management "not engaged in any sort of fraudulent conduct[.]" *In re Le-Natures*, 2009 WL 3571331, at *6.

  c.  **The adverse interest exception to *in pari delicto* does not apply because the Trust alleges that the Debtors benefitted from the Insiders' misconduct.**

The Trustee undersells the high threshold required under New Jersey law to invoke the adverse interest exception to imputation of wrongdoing leading to application of *in pari delicto*. "In the corporate context, a manager's misconduct is usually imputed to the corporation." *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1174 (N.J. Super. Ct. App. Div. 2011). "The adverse-interest exception is a narrow exception that applies only where the fraud is ***entirely adverse*** to the corporation's interest, such that the actor has completely abandoned the corporation's interests." *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 513 (Bankr. D. Del. 2012) (emphasis in original); *see also NCP Litig. Trust v. KPMG*, 945 A.2d 132, 146 (N.J. Super. Ct. Law Div. 2007) (no imputation where agent has "totally abandoned" his principal's interest); *Bondi*, 32 A.3d at 1174 ("[t]he standard governing invocation of this exception is total abandonment").

Certainly, the Trustee has plead misconduct by the Insiders, but the Complaint clearly shows the Insiders did not "totally abandon[]" the Debtors. According to the Trust, NRIA was profitable at times. (Compl. ¶ 26.) The Trustee alleges that NRIA raised more than $600 million between 2018 and 2022. (*Id.* ¶ 24.) NRIA spent millions of dollars on advertising and promotions to attract Investors. (*Id.* ¶ 28.) Profit and revenue generation are not mere "incidental benefits," (Opp. Br. at 21), even if Insiders benefited from them as well through their malfeasance. *See*

5

*Bondi*, 32 A.3d at 1179–81 (applying *in pari delicto* to bar claims where officers drove business into bankruptcy but business "receive[d] meaningful gains over a protracted period").

Additionally, the adverse interest exception is itself subject to an exception – the sole actor exception.

> The general principle of the 'sole actor' exception provides that, if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests. The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability.

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359 (3d Cir. 2001) (internal citations omitted); *see also Thabault v. Chait*, 541 F.3d 512, 528–29 (3d Cir. 2008) (analyzing sole actor exception under New Jersey law). In *R.F. Lafferty*, the Third Circuit applied the sole actor exception to impute a family's fraudulent conduct to multiple debtor entities—even though the family acted adverse to the debtors—where the family "clearly dominated" the debtors through their "ownership and **control**" of the entities. *R.F. Lafferty*, 267 F.3d at 360 (emphasis added). The Trustee similarly pleads the same type of domination that causes the sole actor exception to apply and impute the wrongdoing of the Insiders to the Debtors. (*See* Compl. ¶ 20 ("Salzano **controlled** NRIA using Grabato…"); *id.* ¶ 21 (acknowledging "Salzano's true role as the person **in control of the Debtors**"); *id.* ¶ 22 (alleging "Salzano's undisclosed **control** of NRIA"); *id.* ¶ 14 (the Insiders "operated NRIA and its affiliated debtor entities").)

### d.    It is not premature for this Court to apply *in pari delicto*.

The Trust argues that it is premature to apply *in pari delicto*, but *R.F. Lafferty* demonstrates otherwise. "[W]e hold that because the Committee, standing in the shoes of the debtors, was *in pari delicto* with the third parties it was suing, its claims were properly *dismissed*." *R.F. Lafferty*,

267 F.3d at 344 (emphasis added). This is an unsurprising corollary to the Third Circuit's admonition that "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). At the very least, the circumstances to impute the Insiders' conduct to the Debtors is facially apparent, as are the grounds to apply the sole actor exception—exactly the case as in *R.F. Lafferty*. Precedent from other jurisdictions also holds that *in pari delicto* may result in dismissal on a Rule 12(b)(6) motion. *See e.g.*, *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (affirming dismissal of RICO claims under *in pari delicto* doctrine because "recovery was barred based on the face of [Plaintiff's] complaint"); *Nisselson*, 469 F.3d at 158 (affirming dismissal of complaint based upon doctrine of *in pari delicto*); *In re Dublin Sec., Inc.*, 133 F.3d 377, 381 (6th Cir. 1997) (affirming dismissal of multiple claims based in negligence and fraud in part upon doctrine of *in pari delicto*).

***

In sum, dismissal is appropriate because the Trustee cannot cleanse the Trust of the bad acts of its predecessor-in-interest, and the adverse interest exception to imputation of the Insiders' fraud to the Debtors either does not apply or yields to the sole actor exception.

## II. THE *NJUSA* CLAIM FAILS BECAUSE WIPFLI IS NOT AN AGENT.

The Trustee does not directly confront the statutory definition of an "agent" under the New Jersey Uniform Securities Act ("NJUSA"). Even assuming that Wipfli's services could constitute a "representation"—which they do not, for the reasons addressed below—the Trustee baldly asserts that Wipfli "represented" the Debtors in effecting or attempting to effect the sales of securities by "rolling" Investors into NRIA Partners Portfolio Fund I LLC (the "Fund"). (Opp. Br.

7

at 25–26; Compl. ¶ 68.) The Trustee's argument makes little sense considering the timing of Wipfli's "rolling" assistance, which allegedly occurred *after* the Debtors had already sold a security to an Investor. (*See* Compl. ¶ 68.) Temporally, Wipfli could not effect or attempt to effect a sale of a security when the security was already sold before Wipfli became involved in the process.

In any event, Wipfli's limited accounting services do not constitute a "representation" to sell or attempt to sell securities. The Sixth Circuit directly addressed this argument in *Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012)[2]:

> It is not enough that the attorney "represents" the issuer in a matter that culminates in the sale of securities; he must represent the issuer "in effecting or attempting to effect" the sale, meaning that **carrying out or bringing about the sale must be the job the client hires the attorney to perform**. That is not what securities lawyers generally do, and that was not what Durham did even under a view of the evidence most favorable to the plaintiffs.

---

[2] The Trustee critiques the citation to *Bennett* because it applies Kentucky's iteration of the Uniform Securities Act and does not cite to New Jersey or Third Circuit law. (Opp. Br. at 27.) The Trustee ignores that the NJUSA is a uniform law and "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar laws and to co-ordinate the interpretation and administration of this act with related federal regulations." N.J.S.A. § 49:3-75. The Trustee does not—and indeed, cannot—show that Kentucky's law differs from New Jersey's law on the definition of "agent." *Compare* N.J.S.A. § 49:3-49(b) (defining "agent" as "any individual other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities[,]" with certain enumerated exceptions not relevant here) to Ky. Rev. Stat. § 292.310(1) (defining "agent" as "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities"). *See also Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 729 (Minn. 1983) (interpreting Minnesota's definition of "agent," which was "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities").

The Trustee also tries to distinguish *Bennett* by noting that it addressed the involvement of a lawyer in the sale of securities instead of accountants. (Opp. Br. at 27–28.) The Trustee's point is puzzling because the factual distinction inures to *Wipfli's* benefit, not the Trustee's. The lawyer in *Bennett* was far more involved in the sale of securities than Wipfli was here—the lawyer "drafted the documents necessary for the deals, including joint-venture agreements and private placement memoranda that provided details about the investment opportunity. He also told the prospective investors he was available to answer their questions." *Bennett*, 683 F.3d at 735. Even so, the attorney was not an "agent" under Kentucky securities law. *Id.* at 739–40. The Trustee does not allege that Wipfli was nearly that involved in the sale of the Debtors' securities.

8

*Id.* at 738–39 (emphasis added).  The Debtors did not "hire" Wipfli to "carry[] out or bring[] about the sale" of their securities, nor did any of the activities the Trustee describes that Wipfli performed lead to that result.  (Opp. Br. at 26, 28.)  Recognizing this, the Trustee concludes by reiterating its allegations that Wipfli "was involved" in the Debtors' Ponzi scheme. (Opp. Br. at 28.)  That is simply not enough where a third party's actions can be a "but-for cause of a later sale of securities" without resulting in agency under the NJUSA.  "[T]he statute requires more[,]" and the Trustee has not shown it.  *See Bennett*, 683 F.3d at 738.

### III.   THE COURT SHOULD DISMISS THE ACCOUNTING MALPRACTICE CLAIM.

The Trustee remains unwilling to decide whether its accounting malpractice claim stems from purported negligent services to the Debtors or Investors.  The Trustee's lack of precision shows that it wants its claim construed both ways, as it claims damages for the *Investors* stemming from a breach of an alleged duty of care to the *Debtors*.  The Trustee cannot have its claim both ways under New Jersey law.  Regardless of which party it seeks to vindicate –whether the Debtors or the Investors – the claim fails.

> **a.    The Trustee does not plead sufficient facts to establish that Wipfli owed a duty of care to each Debtor, nor that Wipfli's ostensible failure to follow GAAP standards caused harm to the Debtors.**

The Trustee does not sufficiently clarify its accounting malpractice claim to comply with pleading rules.  It alleges that it has "plausibly pled that Wipfli owed the Debtors a duty of care" by referring to engagement letters between Wipfli and unspecified Debtor entities and payments by unspecified Debtor entities to Wipfli. (Opp. Br. at 29.)  The Trustee's contention does not square with the fact-intensive inquiry required to determine whether a duty of care exists:

> Under New Jersey law, the determination of an existence of a duty…[involves] [a]n important, although not dispositive consideration, [of] the foreseeability of injury to others from the defendant's conduct.  Also important are the nature of the risk

9

> posed by the defendant's conduct, **the relationship of the parties**, and the impact on the public of the imposition of a duty of care.

*Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*, No. 19-cv-20525, 2024 WL 3032578, at *4 (D.N.J. June 17, 2024) (emphasis added) (citing *Snyder v. Am. Ass'n of Blood Banks*, 676 A.2d 1036, 1048 (N.J. 1996)). By refusing to state which Debtor entities engaged Wipfli or which paid Wipfli for its work, the Trustee makes it impossible to gauge the breadth and magnitude of the parties' relationship—to the extent any even existed. Without this specificity, all the Trustee offers is a conclusion that a duty of care existed. That is not sufficient to state a claim under Fed. R. Civ. P. 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rejecting conclusory allegations for sufficiency of pleading).

The Trustee asserts that its accounting malpractice claim need not comply with Fed. R. Civ. P. 9(b). It's not clear how the Trustee construed Wipfli's argument to assert a need to comply with Fed. R. Civ. P. 9(b)—Wipfli does not invoke the rule in its argument on the Trustee's accounting malpractice claim. (*See* Wipfli Br. (Adv. Dkt. 6) at 13–16.) If the Trustee is arguing that identification of the parties to whom Wipfli owed a duty of care would unnecessarily hold it to the Rule 9(b) standard, then the Trustee misunderstood Wipfli's argument. Because New Jersey law sets a fact-specific standard to determine whether a duty of care exists, a recitation that unnamed Debtors were owed a duty of care by Wipfli does not "plausibly" establish that each one of those Debtors is owed a duty of care—especially where the Complaint acknowledges that the underlying engagement letters were between Wipfli and singular entities, not a collective of the Debtors. (*See* Compl. ¶ 57.) The Trustee is required to allege those facts under Rule 8 and is not being held to a Rule 9(b) standard.

10

The Trustee also misunderstands Wipfli's argument regarding proximate cause. The Trustee has not plead a link between Wipfli supposedly "advising NRIA contrary to GAAP accounting standards for their personal benefit" with the damages it claims stem from that failure.[3] (Compl. ¶¶ 105-106.) The Trustee does not explain how Wipfli's accounting "advice" led to financial losses for the Debtors, excessive advertising costs, payments to closely related parties, or violations of the Debtors' governing documents—the fault for those events lies with the Insiders, not with Wipfli. In sum, the Trustee has not established, let alone alleged, that Wipfli took on a duty to ensure Debtor's financial statements complied with GAAP. It did not. And, even if it had, the Trustee has not shown that the Wipfli's allegedly non-GAAP-compliant advice was a "substantial factor" in the damages it alleges. *See Cast Art Indus., LLC v. KPMG LLP*, 3 A.3d 562, 576 (N.J. Super. Ct. App. Div. 2010) (proximate cause required to state accounting malpractice claim necessitates allegation that malpractice was a "substantial factor" in claimed damages), *overruled on other grounds*, 36 A.3d 1049 (N.J. 2012).

    **b.**    **The Trustee cannot pursue a claim for the Investors against Wipfli under the Accountant Liability Act.**

At best, the Trustee pleads facts to meet only one of the three requirements for third-party claimants like the Investors to assert a claim for accounting malpractice. The Trustee acknowledges that it must allege that (1) each Investor asserting a claim was "specifically identified" to Wipfli, (2) Wipfli knew of each "specified transaction" by each Investor for which the Investors relied upon Wipfli, and (3) Wipfli directly expressed to each Investor that it

---

[3] The Trustee does not allege, and it could not allege, that Wipfli was ever engaged to ensure that financial statements accorded with GAAP. Wipfli did not prepare the financial statements. It did not audit the financial statements. It did not have a duty to ensure the financial statements complied with GAAP.

11

understood the Investor would rely upon Wipfli's accounting services. *See* N.J.S.A. § 2A:53A-25(b). (Opp. Br. at 31.)

While the Trustee has plead that Wipfli knew that Investors would rely on Wipfli's accounting services to the Debtors, the Trustee does not show that Wipfli knew the identity of the Investors, the specific transactions each Investor would make relying upon Wipfli's work product, or that Wipfli expressed its understanding of that reliance. Without these allegations, the Court must dismiss the Trustee's accounting malpractice claim on behalf of the Investors. *See Cast Art Indus., LLC*, 36 A.3d at 1059–60 (dismissing third-party accounting malpractice claim for failure to meet elements of N.J.S.A. § 2A:53A-25(b)(2)).

## IV.   THE AIDING AND ABETTING CLAIM FAILS TO MEET THE RULE 9(B) STANDARD.

The Trustee still has not squared the Complaint with the elements of an aiding and abetting fraud claim and the particularized pleading requirements under Rule 9(b).

First, the Trustee is not entitled to a relaxed pleading standard as result of its role. (*See* Opp. Br. at 32.) "Courts sometimes relax the heightened standard for bankruptcy trustees bringing fraud claims on behalf of a debtor and its creditors **where the trustee has not been afforded any discovery prior to filing a complaint**." *See e.g., In re SRC Liquidation LLC*, 581 B.R. 78, 86–87 (Bankr. D. Del. 2017), *aff'd on appeal*, 765 F. App'x 726 (3d Cir. 2019) (emphasis added). Contrary to that scenario, the Trustee is no stranger to facts or the parties in this matter. Counsel for the Trustee represented the Official Committee of Unsecured Creditors in the underlying bankruptcy proceeding (*see* Case No. 22-14539-JKS (Bankr. D.N.J.)), and the Trustee has initiated and litigated multiple adversary proceedings. Consequently, the Trustee has had access to information regarding the parties and the facts in this matter for years—there is no information deficit to rectify by relaxing the Rule 9(b) pleading standard.

12

Substantively, the Trustee's position is that its general allegations as to the identity of the individuals in the scheme is sufficient to supports its claim. (Opp. Br. at 32–35.) That is not sufficient under Rule 9(b). Where a plaintiff alleges fraud, the plaintiff must "also must allege **who made a misrepresentation to whom** and the general content of the misrepresentation" to meet the particularity requirement under Rule 9(b). *Bestherb, Inc. v. Yinlink Int'l Inc.*, No. 22-06548, 2024 WL 3898039, at *6 (D.N.J. Aug. 22, 2024) (quoting *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 (3d Cir. 2015)) (emphasis added).

The Trustee has not alleged the identity of the *particular* Investors to whom *particular* Insiders made misrepresentations as is required. This is not an academic exercise – the Trustee acknowledges that "an underlying wrongdoing by the principal actor" is an element of aiding and abetting fraud under New Jersey law (Opp. Br. at 33), yet Wipfli has no means to identify the particular fraudster at issue. Without this information, Wipfli cannot fully determine whether it "knew of [its] role" in the fraud, prejudicing its ability to formulate a responsive pleading – a problem heightened by the fact (acknowledged by the Trustee) that Wipfli's engagement and involvement varied among the Debtors. (Compl. ¶ 57 (describing an engagement letter between Wipfli and USC for services to various unspecified "NRIA LLC entities" that did *not* include NRIA); *cf. In re Reach McClinton & Co.*, 62 B.R. 978, 982 (Bankr. D.N.J. 1986) ("[t]he defendants have sufficient information from which they can formulate a responsive pleading").

## V.  THE UNJUST ENRICHMENT CLAIM FAILS IF THE OTHER CLAIMS FAIL.

The Trustee contends that it would be unjust for Wipfli to retain sums paid by the Debtors to Wipfli not only for Wipfli's ostensible wrongdoing under the fraud claims, but also because it committed accounting malpractice. (Opp. Br. at 35–36.) Wipfli's same point applies whether or not the accounting malpractice claim is included as a basis for Wipfli's purported unjust retention

of what the Debtors paid to Wipfli for accounting services. If the Court dismisses the fraud claims and the accounting malpractice claims, as Wipfli argues it should, the Trustee has no basis to assert that Wipfli's retention of sums paid for services rendered to the Debtors is unjust. The Court should dismiss the unjust enrichment claim.

## CONCLUSION

For the reasons stated above, the Court should grant Wipfli's Motion to Dismiss. Dismissal is also consistent with the Trustee's decision to amend its Adversary Complaint against Joseph Cipolla, Cipolla & Co., LLC, among others, withdrawing the very same claims that remain pending against Wipfli, save for unjust enrichment, in the face of Cipolla making ostensibly the same arguments in support of dismissal as those set forth by Wipfli. (*Compare* Cipolla Adversary Complaint (24-01097-JKS, Dkt. 1) to Cipolla Amended Adversary Complaint (24-01097-JKS, Dkt. 20), withdrawing Counts V (Aiding and Abetting Fraud), VI (Aiding and Abetting Securities Fraud), VII (Aiding and Abetting Breach of Fiduciary Duty), and VIII (Accounting Malpractice), and Cipolla's Motion to Dismiss (24-01097-JKS, Dkt. 10). Unlike Wipfli, Cipolla was engaged by NRIA to provide accounting services. The Trustee further claims Cipolla "quickly became aware of the scope of the fraud and Ponzi scheme" and "profited from it." (Cipolla Am. Compl. ¶ 2.) The withdrawal of claims against Cipolla, after Cipolla filed its motion to dismiss, while maintaining the same claims against Wipfli is especially surprising because Cipolla, which Wipfli acknowledges has other claims pending against it, allegedly received several million dollars in payments for services from NRIA. (Cipolla Am. Compl. ¶¶ 52-60.) Whereas, Wipfli allegedly was paid a little more than $318,000 for several years of services to NRIA affiliate entities.

14

Dated: October 1, 2024.    /s/ *Jennifer Fiorica Delgado*

Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, NJ 07068
Telephone (973) 597-2500
Email:    metkin@lowenstein.com
         nfulfree@lowenstein.com

Jennifer Fiorica Delgado, Esq.
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone (212) 262-6700
Email:    jdelgado@lowenstein.com

GODFREY & KAHN, S.C.
Daniel T. Flaherty (*pro hac vice* application forthcoming)
Daniel J. Blinka (*pro hac vice* application forthcoming)
Nicholas J. Bezier (*pro hac vice* application forthcoming)
833 E. Michigan St., Ste. 1800
Milwaukee, WI  53202
Telephone (414) 273-3500
Email:    Dflaherty@gklaw.com
Email:    Dblinka@gklaw.com
Email:    Nbezier@gklaw.com

*Counsel to Defendant, Wipfli LLP*

15

31874340.1