**Order Filed on December 13, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: <br><br> **NATIONAL REALITY INVESTMENT ADVISORS, LLC,** *et al.*, <br><br><br> Debtors. | Case No.:   22-14539 <br> Chapter:    11 <br> Judge:      John K. Sherwood |
| **AIRN LIQUIDATION TRUST CO., LLC,** <br>     Plaintiff, <br> v. <br> **WIPFLI LLP,** <br>     Defendant. | Adv. Pro. No.:  24-01456 |

## DECISION RE: DEFENDANT'S MOTION TO DISMISS

| | |
|---|---|
| Debtor: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. No.: | 24-01456 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

In this adversary proceeding, plaintiff AIRN Liquidating Trust Co. LLC, seeks a judgment against defendant Wipfli LLP for its alleged role in a real estate Ponzi scheme carried out through National Realty Investment Advisors, LLC, and its affiliates ("NRIA"). Wipfli performed accounting services for NRIA and U.S. Construction, Inc. ("USC"), who is also accused of being a key participant in the scheme. Generally, the complaint alleges that Wipfli had knowledge of the fraudulent acts of NRIA and USC by virtue of its preparation of tax returns and other financial documents which were used to inflate the profitability of certain NRIA properties and induced investors to invest unwittingly into the Ponzi scheme. Wipfli has moved to dismiss the complaint. For the reasons set forth below, the motion is granted as to Count II and denied as to all the other Counts.

## JURISDICTION

Wipfli denies that this adversary proceeding is core under 28 U.S.C. §157(b)(2), does not consent to entry of final judgment by this Court, and has demanded a jury trial. [ECF No. 6-1, p. 9 of 25]. Plaintiff alleges that this is a core proceeding citing to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). Under 28 U.S.C. § 157 (b)(3), this Court must determine whether this proceeding is core on its own motion or upon a motion by a party. Neither party has moved for such a determination. The Court directs the parties to meet and confer on whether this matter should be treated as a core or non-core proceeding and, if necessary, a briefing schedule to present the issue to the Court for determination. To the extent this proceeding is ultimately determined to be non-core, this decision

Page 3
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. No.:   24-01456
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

would constitute the Court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

## MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 8(a)(2) a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint does not need "detailed factual allegations," but the plaintiff is obligated to show grounds for relief that are more than labels, conclusions, or elements of a claim. *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, to survive a motion to dismiss under Rule 12(b)(6), a complaint requires "sufficient factual matter" that, when accepted as true, states a claim plausible on its face. Factual plausibility exists when factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570).

The court's task is context-specific, and if the court cannot infer from well-pleaded facts more than the possibility of misconduct, then the complaint has only alleged, but not shown, entitlement to relief. *Ashcroft*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Federal Rule of Civil Procedure 12(b)(6) is made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012 and governs on a motion to dismiss. "In order to grant a 12(b)(6) motion to dismiss, the court must find that [the plaintiff] will be unable to prevail even if [he or she proves] all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint." *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000).

Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. No.:   24-01456
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

Additionally, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard upon fraud claims, requiring a party to "state with particularly the circumstances constituting fraud." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (holding that while dismissal under Rule 12(b)(6) alone is not proper, dismissal under Rule 9(b) is, due to the fraud-claim particularity requirements).

## ALLEGED FACTS AND PROCEDURAL HISTORY

NRIA filed for Chapter 11 relief on June 7, 2022. Its Amended Chapter 11 Plan was confirmed on August 10, 2023, and provided for the formation of a liquidation trust as a successor to NRIA's bankruptcy estate for purposes of liquidating real estate assets and pursuing litigation. The litigation claims contributed to the trust under the Chapter 11 Plan included claims contributed by NRIA's investors. [ECF No. 9, p.14].

The complaint against Wipfli contains four (4) counts summarized below.
- Count I – Aiding and Abetting Fraud – Wipfli, through its accounting activities, knowingly assisted the fraud committed by NRIA, USC, and the Insiders against NRIA's investors by making properties look more profitable and helping NRIA to comingle funds in violation of operating documents and private placement memoranda.
- Count II – Aiding and Abetting Securities Fraud Under New Jersey Law – As an agent of NRIA, Wipfli materially participated in the fraudulent sale of securities to the investors.
- Count III – Accounting Malpractice – Wipfli is liable for negligence in performing its accounting services for NRIA and is also liable to the investors because it knew that investors would be relying on their work.
- Count IV – Unjust Enrichment – Wipfli was paid $318,200 for its services and the retention of these funds would be unjust.

In its motion to dismiss, Wipfli denies the factual allegations of plaintiff and contends that each of the Counts of the complaint is legally deficient. [ECF No. 6]. The defendant contends: that

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 5 of 18

Page 5
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

the complaint should be dismissed under the equitable doctrine of *in pari delicto*; that there is no liability under the New Jersey Uniform Securities Act ("NJUSA") because Wipfli did not engage in the sale of securities and was not NRIA's agent; that the accounting malpractice claim fails because it seeks to recoup damages suffered by the investors as opposed to NRIA and because there was no agreement that investors could rely on Wipfli's work; and, that the unjust enrichment claim has no merit because it is based on groundless fraud claims.

## LEGAL ANALYSIS

### I. IN PARI DELICTO

Plaintiff alleges that the main culprits in the NRIA Ponzi scheme were the "Insiders" described in the complaint: Thomas (Nick) Salzano, Dustin Salzano, Rey Grabato, and John Farina. These Insiders were also the primary beneficiaries of the fraudulent scheme. Wipfli suggests that the plaintiff is attempting to shift the culpability for the scheme from the corrupt Insiders to an accounting firm. Because plaintiff is the successor to NRIA, Wipfli contends that the actions of the Insiders should be imputed to NRIA, and NRIA should not be able to assert any of the claims in the complaint for damages that it caused.

This is the gist of defendant's argument under the *in pari delicto* doctrine which "provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Off. Comm. Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001). The basis for the *in pari delicto* defense is two-fold: (1) "courts should not lend their good offices to mediating disputes among wrongdoers" and (2) "denying judicial relief to an admitted wrongdoer

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 6 of 18

Page 6
| | |
|---|---|
| Debtor: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. No.: | 24-01456 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

In *Lafferty*, the Third Circuit affirmed the dismissal of "deepening insolvency" claims against independent underwriters of a debtor's debt securities where the plaintiff, a creditors' committee, brought claims on behalf of the debtor that operated a Ponzi scheme. The Court analyzed whether the conduct of the debtor's principals should be imputed to the debtor and thus to the plaintiff who was standing in the debtor's shoes. The plaintiff suggested that imputation would be unwarranted because it was an innocent successor to the debtor and the bad actors were removed from management because of the bankruptcy. Therefore, the suit was being brought on behalf of innocent creditors. But the Court was not moved by these arguments. It stated that under § 541 of the Bankruptcy Code, the Court could not consider events that occurred after the commencement of the bankruptcy case and had to evaluate the *in pari delicto* defense without regard to whether the plaintiff was an innocent successor. *Lafferty*, 267 F.3d at 356-357. Next, the Court considered the "law of imputation" which provides that courts must impute the fraud of an officer to a corporation when the officer commits the fraud: (1) in the course of his employment and (2) for the benefit of the corporation. *Id.* at 358. Finally, the Court noted that with respect to the second prong above, there is an "adverse interest exception" which provides that fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation. And, to make matters more complicated, the adverse interest exception has its own exception—the "sole actor exception." Under the sole actor exception, if an agent is the sole shareholder of the corporation, then that agent's fraudulent conduct is imputable

Page 7
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

to the corporation regardless of whether the agent's conduct was adverse to the corporation's interest. *Id.* at 359-60. In sum, the Court in *Lafferty* imputed the fraudulent conduct of the debtor's principals because they perpetrated the alleged fraud in the course of their employment and because, although they may have acted adversely to the interests of the debtor, they were the sole actors engaged in the alleged fraudulent conduct. *Id.* at 360.

When the Court's analysis in *Lafferty* is applied to the allegations of the complaint and the known facts here, there are several arguments against the application of the *in pari delicto* doctrine. First, in *Lafferty*, there is no doubt that the claims brought by the creditors committee were solely on behalf of the debtor. Here, though claims are asserted on behalf of NRIA, they are also being asserted on behalf of NRIA's investors (creditors) who contributed their claims to the liquidating trust under NRIA's Amended Chapter 11 Plan. [BK[1] ECF No. 3256, pp. 38-39]. Second, most of the "Insiders" described in the complaint were *not officers* of NRIA. Dustin Salzano and John Farina are co-owners of USC, not NRIA. Thomas "Nick" Salzano, the alleged mastermind of the Ponzi scheme, was not an officer of NRIA. In fact, it is alleged that his participation in the business was concealed from investors due to his past criminal record. [ECF No. 1, ¶ 21]. Third, though it is not specifically mentioned in the complaint, it is widely known that approximately 7 months before the filing of bankruptcy, NRIA brought in new management. Thus, the conduct of old management arguably should not be imputed to NRIA on the petition date because the Ponzi scheme's co-conspirators were out of the picture by that time. It has been recognized that when there is a change in corporate management before a corporate debtor's filing for bankruptcy, *in*

---

[1] Citations to the main bankruptcy case, 22-14539-JKS, will be distinguished as [BK ECF No.].

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 8 of 18

Page 8
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

*pari delicto* is not an applicable defense for claims brought by a trustee because there is no longer any wrongdoing to be imputed to the trustee. *In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3571331, at *6 (W.D. Pa. Sept. 16, 2009); *see also In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3526569, at *2 (W.D. Pa. Oct. 23, 2009) (reaffirming that based on the new management's appointment "there was nothing to impute to the bankruptcy trustee at the time the bankruptcy was filed"). Fourth, since the complaint describes multiple co-conspirators, the sole actor exception to the adverse interest exception may not apply.

Finally, the plaintiff contends that because *in pari delicto* is an affirmative defense, it generally "cannot be used to support dismissal of a complaint under Rule 12(b)(6)," and dismissal is rarely appropriate even when the complaint pleads facts that might support the defense. *In re CTE 1 LLC*, No. 19-30256, 2023 WL 5257940, at *36 (Bankr. D.N.J. Aug. 11, 2023) (denying a motion to dismiss on grounds that applicability of *in pari delicto* and its exceptions would require factual development). And, "given the fact-intensive nature of the doctrine," courts often deny a motion to dismiss asserting an *in pari delicto* defense under New Jersey law, particularly when discovery has yet to commence. *In re U.S. Mortgage Corp.*, 491 B.R. 642, 676 (Bankr. D.N.J. 2013). Because the complaint contains allegations suggesting that the doctrine may not apply here, Wipfli's motion to dismiss is denied to the extent it relies on *in pari delicto*.

## II. NEW JERSEY SECURITIES LAW

Count II of the complaint alleges that Wipfli is responsible for NRIA's violation of the NJUSA because it provided material assistance to NRIA in selling securities and acted as its agent. Under the NJUSA, an "agent" is "any individual other than a broker-dealer, who **represents** a

Page 9
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

broker-dealer or issuer in **effecting or attempting to effect** purchases or sales of securities." N.J.S.A. § 49:3-49(b) (emphasis added). According to Wipfli, a court must apply two tests to determine whether an agent is civilly liable for the acts of a security seller—first, it must determine that the defendant is an "agent," and *only if* the defendant is an agent must the court consider whether the agent "materially aid[ed]" the security seller to determine whether that agent can be civilly liable under the NJUSA. [ECF No. 6-1, p. 17 of 25]. The Court agrees with this two-part analysis and rejects the suggestion by plaintiff that any *person* that materially aids in the sale of a security might be exposed to liability. This is not what N.J.S.A. § 49:3-71(d) says. The term "person" in the statute is qualified by "who directly or indirectly controls a seller liable under subsection (a)." Wipfli is not such a person.

Thus, the ultimate question is whether Wipfli was an agent under the NJUSA. The plaintiff argues that "an agent need not directly effect or attempt to effect purchases or sales of securities, it is enough that the individual represented another, here [NRIA], in effecting or attempting to effect purchase or sales of securities. And that is exactly what Wipfli did when it assisted [USC] and [NRIA] in 'rolling' [i]nvestors into the "Fund," [(defined in complaint),] which was effectuated by selling the rolling [i]nvestors securities." [ECF No. 9, p. 26]. But the complaint says that it was the Insiders who caused NRIA to offer and sell membership units in the Fund. [ECF No. 1, ¶ 29]. As to Wipfli's involvement, the complaint alleges that it,

> knowingly assisted USC, NRIA, and the Insiders with "rolling" [i]nvestors into the Fund by *booking* the various "rollovers" by [i]nvestors and *providing accounting advice* specifically related to the Fund. Wipfli maintained reports tracking all the redemptions and rollovers related to the Fund and the LLC entities "rolling" into it. For example, on January 3, 2020, Wipfli emailed Dustin Salzano explaining exactly how Wipfli was *recording the rollovers* from NRIA [i]nvestors into the Fund by "moving the original customer's capital

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 10 of 18

Page 10
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

> account to NRIA as of the roll over date." The "rollup" of [i]nvestors' interests into the Fund was never disclosed to then existent Fund [i]nvestors, all of whom were damaged by the rollups not being supported by actual value and resulting in phantom profits being buried in the Fund – a fact Wipfli knew or should have known yet did nothing about. Instead, they lent their professional services and the imprimatur of a multi-national accounting firm to lend credibility to the illicit Ponzi scheme.

[*Id.* at ¶ 68, (emphasis added)]. As set forth above, the complaint states that the Insiders were the ones who rolled the investors' money into the Fund. Wipfli's role is described as booking, recording, and accounting advice with respect to these transactions. From the allegations of the complaint, the Court does not see the role of Wipfli as effecting the sale of securities to investors.

In a related adversary proceeding in this bankruptcy case, *AIRN Liquidation Trust v. Media Effective LLC, et al.,* (Adv. Pro. No. 23-01335, ECF No. 91), this Court considered the meaning of the term "agent" in the NJUSA and followed the case *Zendell v. Newport Oil Corporation*, 226 N.J. Super. 431, 435 (App. Div. 1988). In *Zendell*, plaintiff alleged a law firm was liable as a "seller" of securities as defined by the Securities Act of 1933, 15 U.S.C.S. § 77a *et seq.*, ("1933 Act"), and the NJUSA for its role in organizing and presenting the sale of unregistered securities on behalf of a partnership it represented. In discussing the term "seller" under N.J.S.A. § 49:3-71, the *Zendell* court favorably cited the Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622, 643 (1988), which limited the broad application of the 1933 Act, finding the language and legislative history did not support expanding those potentially liable beyond persons who "pass title," "offer," or "solicit" offers to buy securities. Instead, *Pinter* held the 1933 Act's "failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants collateral to the offer or sale." *Id.* at 650. In rejecting the "substantial factor" test, which previously imposed liability to

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 11 of 18

Page 11
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

persons "whose participation in the buy-sell transaction [wa]s a substantial factor in causing the transaction to take place," *id.* at 650, *Pinter* noted that such a test would,

> extend . . . liability to participants only remotely related to the relevant aspects of the sales transaction. Indeed, it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to . . . strict liability for rescission. The buyer does not, in any meaningful sense, "purchas[e] the security from" such a person.

[*Id.* at 651]. Therefore, the appellate court in *Zendell* did not impose liability on the law firm, finding "no plaintiff had any contact with [the firm]," the firm never acted as a broker, selling agent, or underwriter for the partnership venture, and therefore, the law firm could not be considered a seller or control agent under either federal or state securities law. 226 N.J. Super. at 441.

Plaintiff takes issue with the application of *Zendell* to this case, asserting that it does not define "agent" under the NJUSA, and instead interprets federal securities law. While it is true that *Zendell* does not directly define "agent," the decision uses the term "control agent" throughout. *Id.* at 440-41. *Zendell* was also heavily relied on by the court in *Abrams v. Ohio Casualty Insurance Company*, 322 N.J. Super. 330, 335-38 (App. Div. 1999), which refused to impose liability to persons other than sellers or control persons. It is clear that *Zendell* continues to stand for the proposition that liability under the NJUSA should only extend to those that directly participate in the sale of securities, and lawyers and accountants are unlikely to fit that definition. The Court is also persuaded by Wifli's argument that Kentucky's iteration of the Uniform Securities Act as discussed in *Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012), is informative in the present case. [ECF No. 10, p. 13 of 20 n. 2]. The identical definitions of the term "agent" in both NJUSA § 49:3-

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 12 of 18

Page 12
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. No.:   24-01456
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

49(b) and Kentucky's statue, Ky. Rev. Stat. § 292.310(1), as an individual "who represents a[n] . . . issuer in effecting or attempting to effect purchases or sales of securities," suggests that this Court can rely on *Bennett* as persuasive authority. *See also* N.J.S.A. § 49:3-75 (stating the NJUSA is to "be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar laws").

The allegations of the complaint are that Wipfli was involved in bookkeeping, accounting, and advisory functions concerning the transfer of investors' monies to the Fund. They do not establish that Wipfli acted as NRIA's agent in effecting the sale or transfer of securities to NRIA's investors. Wipfli's motion to dismiss Count II of the complaint is granted.

### III. ACCOUNTING MALPRACTICE

Count III of the complaint is an accounting malpractice claim against Wipfli. It appears the plaintiff is alleging that the victims of Wipfli's alleged malpractice were both NRIA and the investors. The complaint says that Wipfli breached its duties by advising NRIA contrary to accounting standards for Wipfli's personal benefit. [ECF No. 1, ¶ 106]. The complaint also alleges that Wipfli knew that NRIA's investors would rely on their accounting services to make significant financial decisions. [ECF No. 1, ¶ 107]. This suggests that Wipfli had a duty to the investors.

In its motion to dismiss, Wipfli describes the accounting malpractice claim as "muddled" and "nebulously constructed" because it asserts that Wipfli had a duty of care to NRIA but is seeking relief of behalf of the investors. The defendant also notes that the complaint does not specify which of the many NRIA entities Wipfli was engaged to perform services for. While it is true that the complaint is not clear as to what entities Wipfli was retained to perform services for,

Page 13
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

the complaint does allege that Wipfli "executed engagement letters with some individual NRIA LLC entities," and provided financial statements, statements of income and earnings, and tax returns. [*Id.* at ¶ 58]. The complaint provides an example of an engagement between Wipfli and Union Street Capital 434, LLC (one such NIRA LLC entity), retaining Wipfli to prepare its 2019 financial statement. [*Id.*]. The complaint also states that Wipfli prepared the 2031 Lombard 2020 tax returns, alleging that this account was used to launder money between NIRA entities. [*Id.* at ¶ 64]. To the extent it is still unclear, Wipfli knows what entities they were retained to, and ultimately did, provide services for. As set forth above, the complaint alleges that Wipfli owed a duty of care to NRIA and the investors, and the plaintiff is seeking damages for both.

As to NRIA, the Court agrees with plaintiff that to survive a motion to dismiss, it need only plead facts to plausibly show that: (1) Wipfli owed a duty of care to NRIA; (2) that Wipfli breached that duty; and (3) the breach injured NRIA. *Country Club Drive Assocs., LLC v. Clinton Twp. Sewerage Auth.*, 2024 WL 3032578, at *6 (D.N.J. 2024). The Court also finds that the Rule 8 pleading standard applies as opposed to Rule 9(b) because this is a negligence claim. Because the complaint pleads facts that plausibly show that Wipfli had a duty of care to NRIA, that it breached that duty, and that NRIA was injured as a result, Wipfli's motion to dismiss the accounting malpractice claim is denied to the extent it is based on Wipfli's duties to NRIA.

To prevail on the accounting malpractice brought on behalf of the investors, the plaintiff has a more difficult burden. Pursuant to NJSA § 2A:53A-25(b)(2), an accountant can be held liable to a third party when the accountant (1) knew that the services rendered to the client would be made available to the third party, and the third party and the specified transaction were specifically

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
Document    Page 14 of 18

Page 14
Debtor:       National Realty Investment Advisors, LLC, *et al.*
Case No.:     22-14539
Adv. No.:     24-01456
Caption:      **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

identified to the accountant; (2) knew the third party intended to rely upon the accountant's service in connection with the specified transaction; and (3) the accountant directly expressed, by word or conduct, the accountant's understanding of the third party's intended reliance. The complaint states that Wipfli knew that NRIA's investors would rely on their accounting services to make significant financial decisions. [ECF No. 1, ¶ 107]. This statement touches upon each of the 3 requirements, although in a very general way. The missing allegations relate to specific investors and specific transactions. But the complaint acknowledges that the plaintiff has the burden to establish each of the 3 requirements of N.J.S.A. § 2A:53A-25. Wipfli knows that an accounting malpractice claim is being brought against it on behalf of the investors. Wipfli's argument is that the plaintiff will not be able to prevail on that claim. That argument is better addressed at the summary judgment stage of the case, or at trial. Count III of the complaint will not be dismissed.

## IV. FAILURE TO PLEAD FRAUD CLAIMS WITH PARTICULARITY

Count I of the complaint is for aiding and abetting fraud. The plaintiff contends that the Insiders operated NRIA to perpetuate a Ponzi scheme by "knowingly manipulating and falsifying NRIA's financial statements, bank statements, and financial information and actively working to misrepresent true profitability by concealing the fact that NRIA had little to no revenue to pay [i]nvestors the alleged guaranteed 12% or more returns except from other defrauded [i]nvestors' money." [ECF No. 1, ¶ 82]. The plaintiff also alleges that Wipfli knew about the fraud at NRIA and aided and abetted it. [*Id*. at ¶ 83]. The complaint states that Wipfli provided substantial assistance through its accounting activities and furthered the fraud by making properties look more profitable to investors and aiding in the commingling of funds in contravention of representations

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
                          Document      Page 15 of 18

Page 15
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Adv. No.:    24-01456
Caption:     **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

made to investors in the LLC operating documents and private placement memoranda. [*Id*.]. Without this assistance, the Ponzi scheme would not have been as expansive and destructive to the investors. [*Id*.]. The complaint has more than 20 pages of preliminary paragraphs describing the alleged Ponzi scheme and USC's role in the scheme. More than 20 paragraphs of the complaint address Wipfli's role in the Ponzi scheme. [*Id.*at ¶¶ 52-78].

Wipfli contends that these allegations do not meet the heightened standard for pleading fraud claims under Rule 9(b) which provides that the complaint must "state with particularity the circumstances constituting fraud[,] . . . .[but m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A claim for aiding and abetting fraud survives dismissal if a complaint's allegations, which must be taken as true, plausibly show: (1) an underlying wrongdoing by the principal actor; (2) that the defendants knew of their role in the illegal or tortious activity at the time they provided assistance; and (3) that the defendants knowingly and substantially assisted the principal violation. *State, Dept. of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l., Inc.*, 378 N.J. Super 468, 484 (App. Div. 2006). "Bankruptcy courts have afforded greater pleading liberality in adversary complaints brought by trustees, because a trustee comes to the action as a 'third party outsider to the fraudulent transaction[] that must plead fraud on second-hand knowledge for the benefit of the estate and all of its creditors.'" *In re NJ Affordable Homes*, 2013 WL 6048836, at *11 (Bankr. D.N.J. 2013) (quoting *In re Reach McClinton & Co., Inc.*, 62 B.R. 978, 982-83 (Bankr. D.N.J. 1986)). The "relaxed Rule 9(b) standard" described in the above New Jersey bankruptcy cases should also be applied here because the plaintiff is a liquation trustee who has the difficult chore of pleading fraud based on knowledge obtained from documents and other second-hand sources.

Page 16
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. No.:   24-01456
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

As to the elements of the aiding and abetting fraud claim, the complaint adequately pleads facts describing the underlying wrongdoings by the Insiders in connection with the Ponzi scheme. [ECF No. 1, ¶¶ 14-72]. Wipfli's alleged role in the scheme is also described in the complaint with some detail. Examples include: its knowledge of various loans and financial transactions between NRIA and USC that were integral to the Ponzi scheme (¶ 54); its knowledge that properties were transferred to "McFillin" for no consideration or reduced prices (¶¶ 48-51, 70); its knowledge that investor funds were comingled with other funds in violation of operating agreements (¶¶ 60-64); the movement of guaranteed payments to investors from the operating subsidiary to the NRIA parent in an effort to make the subsidiary look more profitable (¶¶ 66-67); assistance with the rollover of investors' investments from the subsidiary level to the Fund without the investors' knowledge to make the individual properties look more valuable and to hide the Ponzi scheme (¶¶ 68-69); Wipfli knew that NRIA's guaranteed returns to investors of 12% or more was too good to be true (based on Wipfli's preparation of K-1s and tax returns) and indicia of a Ponzi scheme but did nothing to disclose it (¶¶ 55, 71-72 and 78); and, sending refunds for accounting services to NRIA even though the services were paid for from operating entities' funds which were not to be comingled under terms of the private placement memoranda (¶ 75). Taken together, these allegations are specific enough to demonstrate how plaintiff intends to prove that Wipfli knew that fraudulent activities were afoot at NRIA and USC.

What does the complaint say about how Wipfli *substantially assisted* in the fraud? Here, some actions and omissions are specifically set forth: Wipfli was asked to provide advice on at least one draft PPM (¶ 62); Wipfli was involved in preparing the 2031 Lombard 2020 tax returns which showed patterns of transfers in violation of the entity's PPM and operating agreement (¶ 64);

Case 24-01456-JKS    Doc 19    Filed 12/13/24    Entered 12/13/24 13:47:30    Desc Main
                            Document      Page 17 of 18

Page 17
Debtor:       National Realty Investment Advisors, LLC, *et al.*
Case No.:     22-14539
Adv. No.:     24-01456
Caption:      **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

Wipfli was involved in moving expenses incurred by the individual NRIA entities to the NRIA parent accounting books to make the individual properties appear more profitable despite its knowledge investors were promised that these funds would not be commingled (¶¶ 66-67); Wipfli assisted the Insiders in "rolling" investors into the Fund which resulted in phantom profits being buried in the Fund and damages to investors who did not choose to roll into the Fund, a fact that Wipfli knew through its role in maintaining reports of investments into the Fund and redemptions (¶ 68); despite Wipfli's knowledge of the Ponzi scheme, it took no action to disclose the fraud to investors, to protect investors, or remedy any inaccuracies contained within financial documents after discovering the fraud (¶ 78); and, as a catch-all, Wipfli substantially assisted the Insiders in perpetrating the fraud by providing extensive accounting services to USC and NRIA (¶ 77).

The complaint certainly describes acts of assistance by Wipfli for NRIA, USC, and the Insiders. It also criticizes Wipfli's lack of action when it knew (allegedly) that its clients were defrauding investors for their personal benefit. It remains to be seen whether this conduct rises to the level of substantial assistance in the Insiders' fraud. Given that the relaxed Rule 9(b) standard applies to the plaintiff here, the allegations are specific enough. Wipfli's motion to dismiss is denied as to Count I.

## V. UNJUST ENRICHMENT

Count IV of the complaint states that Wipfli received $318,200 for services it performed and that it would be unjust for the defendant to retain these payments because it aided and abetted the Insiders' fraud. Wipfli argues that since the unjust enrichment claim is based on the aiding and abetting fraud claim and that claim should be dismissed, the unjust enrichment claim should suffer a similar fate. But the Court has not dismissed the aiding and abetting fraud claim and is not

Page 18
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. No.:   24-01456
Caption:    **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

prepared to dismiss Count IV at this point either. Though it is unlikely that plaintiff would be entitled to relief under this Count if it did not prevail on one of the other Counts, there is no harm in leaving this Count in place for the time being.

**THEREFORE,** Wipfli's motion to dismiss is granted as to Count II of the complaint and is denied as to all other Counts.

**DATED: December 13, 2024**

_____
Honorable John K. Sherwood
United States Bankruptcy Court